Abram PEEBLES *v.* STATE of Arkansas

CR 96-944 958 S.W.2d 533

Supreme Court of Arkansas
Opinion delivered January 22, 1998

*Craig Lambert,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Gil Dudley,* Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. In 1990, appellant Abram Peebles was convicted of the rape of his three-year-old nephew, M.C., and sentenced to forty years in prison. His conviction was affirmed on appeal. *See Peebles v. State,* 305 Ark. 338, 808 S.W.2d 331 (1991). In 1995, the federal district court granted Peebles habeas corpus relief conditioned on the State's awarding him a hearing on a new-trial motion under Ark. R. Crim. P. 36.4.[1] After the hearing, the Pulaski County Circuit Court denied Peebles's motion. He now appeals from that order and raises numerous assignments of error for why his representation at trial was ineffective and failed to satisfy Sixth Amendment requirements.

Prior to the underlying trial, the trial court held a hearing to decide whether M.C.'s statements about the charged abuse could be relayed to the jury by his mother under the child-hearsay exception, Ark. R. Evid. 803(25). The court made no ruling on M.C.'s competency but did rule that the mother could so testify.

At the underlying trial, Peebles's three-year-old nephew, M.C., did not testify. The State's case consisted of two witnesses. Virginia Ghere, M.C.'s mother and Peebles's sister, testified that on the day in question, she allowed her son to watch television in Peebles's trailer in the trailer park in North Little Rock. Later that day, she returned to Peeble's trailer and saw him pulling up her son's shorts. Peebles, according to Virginia Ghere, was naked and his penis was erect. She testified that her son told her about Pee-

---

[1] Ark. R. Crim. P. 36.4 was the rule in effect in 1990, which set forth the procedure for post-conviction relief for ineffective assistance of counsel. It was replaced effective January 1, 1991, by Ark. R. Crim. P. 37.

bles after they left the trailer: "He bit my dingdong. I bite his dingdong." M.C. added, according to Virginia Ghere: "And we fight dingdongs," and "I got some milk from his dingdong." She said she took the boy to Arkansas Children's Hospital for an examination.

The second witness at trial was Dr. Jim Mark Ingram, who at the time was a resident at Children's Hospital in Little Rock. He examined M.C. for the possibility of sexual assault and testified that he used a Wood's lamp to discover whether there was any sperm or semen on the boy's body. Dr. Ingram explained that through the use of the Wood's lamp, he found a fluorescent substance consistent with sperm present on the boy's mouth, chin, abdomen, torso, and left hand.

The State rested, and Peebles's counsel moved for a directed verdict based on lack of proof of penetration under Ark. Code Ann. § 5-14-101(1)(A) (1987). The trial court denied the motion. The defense counsel then put on a case which consisted of testimony from the State Crime Lab's chief serologist who stated that there was no evidence of semen on oral swabs and rectal swabs taken from M.C. or on a blue washcloth taken from the trailer. Defense counsel also called Peebles's youngest sister and his mother, both of whom related that M.C. had a tick bite on his penis, the implication being that this was the bite he referred to in his conversation with Virginia Ghere. The youngest sister, Melanie Layne, testified that Peebles and Virginia Ghere were "always fighting" and that M.C. told Layne that he asked Peebles for milk and Peebles got him milk and cookies. Another witness, Delena Davis, testified, but the State's objection was sustained regarding alleged statements made by Virginia Ghere to her about Ghere's hatred toward Peebles. The basis for the sustained objection was that the statements were too remote in time.

At the Rule 36.4 hearing before the Pulaski County Circuit Court following the federal district court's order of conditional habeas corpus, Peebles raised the same points for ineffective counsel that he raises in this appeal. The circuit court denied the petition, but we conclude that one of the grounds has merit. As a

consequence, we reverse the order of the circuit court and remand the matter for a new trial.

 We recently stated the law relative to ineffective counsel and the prejudice required for the granting of a new trial:

> To prevail on any claim of ineffective assistance of counsel, the petitioner must first show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Thomas v. State,* 322 Ark. 670, 911 S.W.2d 259 (1995). Second, the petitioner must show that the deficient performance prejudiced the defense as to deprive the petitioner of a fair trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*
>
> Further, when reviewing ineffective-counsel claims, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland v. Washington,* 466 U.S. 668 (1984). The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

*Hall v. State,* 326 Ark. 318, 321, 933 S.W.2d 363, 365 (1996), *reh'g denied,* 326 Ark. 823, 933 S.W.2d 363 (1996) (per curiam). *See also Thomas v. State,* 330 Ark. 442, 954 S.W.2d 255 (1997). This court does not reverse a trial court's denial of postconviction relief unless the ruling was clearly erroneous. *Johninson v. State,* 330 Ark. 381, 953 S.W.2d 883 (1997); *Rowe v. State,* 318 Ark. 25, 883 S.W.2d 804 (1994).

It is in connection with defense counsel's failure to present the jury with M.C.'s inconsistent statements that we conclude his performance was deficient. During the pretrial hearing to determine whether the statements of M.C. could be related to the jury by his mother under Ark. R. Evid. 803(25) (the child-hearsay exception), M.C. was asked numerous questions by the deputy prosecutor and the court. The following colloquy occurred:

| | |
|---|---|
| THE COURT: | Did Abram do something to you several months ago, sometime back? |
| M.C.: | (moves head) |
| THE COURT: | He didn't? Did you tell your mother he did? Speak up. Is that yes or no? |
| M.C.: | No. |
| THE COURT: | He didn't do anything to you and you didn't tell your mother? |
| M.C.: | No. |
| THE COURT: | No? |
| M.C.: | No. |
| THE COURT: | Okay. Did that man over there ever do anything to you? |
| M.C.: | No. |
| THE COURT: | He didn't? Okay. Anything else? |

The young boy, thus, told the trial court five consecutive times that Peebles had not done anything to him several months earlier. This inconsistent colloquy should have been made available to the jury.

Rule 806 of the Arkansas Rules of Evidence provides:

> If a hearsay statement, or a statement defined in Rule 801[d](2)(iii), (iv), or (v), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.

Ark. R. Evid. 806.

We note initially that Ark. R. Evid. 806 and Fed. R. Evid. 806 are substantially similar. One commentator on Federal Rule 806 has explained the rule as follows:

If a hearsay statement is introduced into evidence because it qualifies as an exception to the hearsay rule, it is being introduced for its truth. This makes the credibility of the hearsay declarant important. Thus, Rule 806 provides that the credibility of the hearsay declarant can be attacked and supported just as if the declarant is on the stand testifying. In other words, the ways in which a witness can be impeached and rehabilitated are also the ways in which a hearsay declarant can be impeached and rehabilitated.

3 STEPHEN A. SALTZBURG, ET AL., FEDERAL RULES OF EVIDENCE MANUAL 1674 (6th ed. 1994).

An example of the application of Rule 806 is found in *State v. Kline*, 464 N.E.2d 159 (Ohio App. 1983). In *Kline*, the defendant was convicted of felonious assault and of carrying a concealed weapon. At trial, one Kelly Taylor testified that she witnessed the defendant draw a pistol and point it at her boyfriend, Doug Emmons. She testified that Emmons took the gun immediately and stated: "She tried to kill me — call the cops." *State v. Kline*, 464 N.E.2d at 162. Counsel for the defendant next tried to impeach the credibility of Emmons, who was unavailable although under subpoena at the time. Counsel sought to introduce into evidence a written statement given by Emmons to members of the Norwalk Police Department, which provided: "Gloria Cline [*sic*] [the defendant] pulled a gun on me, I took it away, and the cops came. I lost my hat." *Id.* at 163. The trial court excluded the writing on the ground that it was hearsay.

On appeal, the Court of Appeals of Ohio reversed and, in doing so, stated:

> [T]hese statements were clearly not hearsay. The writing was offered not as substantive evidence, but rather to impeach the credibility and veracity of a hearsay declarant (Emmons). Consequently, the writing was *not* offered to prove the truth of the statements contained therein. Evid. R. 801(C). Extrajudicial statements offered for impeachment purposes are not hearsay since they are not offered for the truth of what they state.

*Id.* (citations omitted). *See also United States v. Wuagneux*, 683 F.2d 1343 (11th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983) (allowing an IRS agent to testify during the government's rebuttal

as to a prior inconsistent statement made by the appellant's accountant, who was unavailable to testify, after the appellant introduced a contrary statement through Fed. R. Evid. 804(b)(3) as a statement against interest). *See generally Lewis v. Gubanski,* 50 Ark. App. 255, 905 S.W.2d 847 (1995) (discussing Ark. R. Evid. 806 in detail).

The Supreme Court of Oregon has addressed the issue of impeaching the testimony of a four-year-old child declarant who was unavailable to testify "due to fear or similar reasons." *See State v. Phillips,* 840 P.2d 666 (Or. 1992). There, statements of the child declarant were admitted into evidence under hearsay exceptions through other witnesses. Those witnesses related the child's declarations about the defendant, who was the child's stepfather, and his sexual abuse of the child. The defense sought to impeach the statements of the child declarant by having the mother testify that the child told her that the natural father of the child had told the child to say "bad things" about the defendant. The trial court granted the state's objection and struck the impeachment testimony.

The Oregon Supreme Court reversed, citing Rule 806, and noted that the commentary to this rule made it clear that in fairness the declarant's credibility ought to be subject to impeachment. The court went on to say that the excluded impeachment evidence was not offered for the truth of the matter asserted and, thus, was not hearsay but was admissible to cast doubt on the credibility of the unavailable child declarant. *See also State v. Evans,* 187 Wis. 2d 66, 522 N.W.2d 554 (1994) (child hearsay declarant's credibility was open to attack just as if the child had testified; trial court affirmed on other grounds); JOHN E.B. MYERS, CHILD WITNESS LAW AND PRACTICE § 4.65, at 257 (1987).

▮ In the instant case, defense counsel made no attempt to offer M.C.'s inconsistent statements into evidence though this information would have been invaluable to the jury. The State's response to this is that offering into evidence the transcript of the pretrial hearing to impeach M.C. would be impermissible because M.C.'s testimony was not given under oath and subject to the penalty of perjury. That is incorrect. It is clear that the transcript

of M.C.'s contrary statements at the pretrial hearing would not be offered as substantive evidence but merely for impeachment purposes. Thus, testimony under oath is not required, and we agree with the holdings of the Court of Appeals in this regard. *Lewis v. State*, 41 Ark. App. 89, 848 S.W.2d 955 (1993); *Harris v. State*, 36 Ark. App. 120, 819 S.W.2d 30 (1991). For purposes of the instant case, we conclude that the fact that M.C.'s answers at the pretrial hearing were not under oath does not foreclose their use under Rule 806 for credibility purposes.

The State also cites *Owens v. State*, 318 Ark. 61, 883 S.W.2d 471 (1994), which stands for the proposition that a witness may only relate information acquired through his or her own observation. Thus, if the mother was not present at the pretrial hearing when M.C. answered the trial court's questions, according to the State, she cannot testify about what the boy said at that time. We disagree. The State's argument ignores Rule 806, which allows for the admission of relevant inconsistent statements of the *declarant*. This impeachment can take place irrespective of whether the mother was present when the inconsistent statements were made. In the instant case, the mother was merely the mouthpiece or conduit for M.C.'s statements, and it is the declarant's statements that are being impeached, not the mother's. *See Lewis v. Gubanski, supra.*

Nor do we perceive the procedure for introducing M.C.'s previous answers at the pretrial hearing as a stumbling block for their use by defense counsel. As in *State v. Kline, supra*, counsel need only have introduced a transcript of the relevant portion of the pretrial colloquy between M.C. and the trial court. This could have been done as part of the cross-examination of Virginia Ghere. It would have been a simple matter to have read the colloquy from the pretrial hearing to the jury.

Because the jury was not informed that the three-year-old boy, who was the critical witness against Peebles, had recanted his story at a pretrial hearing, we conclude that Peebles did not receive a fair trial. While a plausible explanation is that M.C. "froze" at the hearing when surrounded by adults or changed his

story out of fear when faced with Peebles, this was still crucial information that should have been imparted to the jury.

We hold that the *Strickland* test was met and that defense counsel's performance was not only deficient but that there is a reasonable probability that the absent information, had it been known to the jury, would have affected the outcome of the trial.

Reversed and remanded.