Joe Louis DANSBY *v.* STATE of Arkansas

CR 00-1363 66 S.W.3d 585

Supreme Court of Arkansas
Opinion delivered February 14, 2002

*William A. McLean*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., and *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. A jury found Joe Louis Dansby guilty of two counts of capital murder and sentenced him to death on April 24, 1997. On direct appeal, we affirmed the capital-murder convictions and death sentence in *Dansby v. State*, 338 Ark. 697, 1 S.W.3d 403 (1999) (*Dansby I*). Pursuant to Ark. R. Crim. P. 37.5 (2001), Mr. Dansby filed a petition for postconviction relief in which he raised only one claim for relief: that his trial counsel were ineffective in permitting him to testify because doing so led to the State's use of rebuttal testimony from his wife that he confessed his crimes to her. The circuit court found that the decision to testify was a strategical and tactical decision made jointly by Mr. Dansby and his attorneys and denied his petition for postconviction relief. Mr. Dansby filed a notice of appeal from the denial of postconviction relief. He also filed a petition for writ of error *coram nobis* that this court denied. *Dansby v. State*, 343 Ark. 635, 37 S.W.3d 599 (2001) (*per curiam*). Mr.

Dansby's appeal from the denial of postconviction relief is now before this court, and we affirm the circuit court's decision.

The facts of this case were explained in detail in *Dansby I*, and need not be repeated here except as they relate to the Rule 37.5 hearing. Eugene D. Bramblett, one of Mr. Dansby's trial attorneys, was the only witness at the Rule 37.5 hearing. Mr. Bramblett testified on direct examination that, of all the evidence offered during the three-week trial, the testimony of Joe Dansby's wife was the most damaging to their case. Mrs. Dansby first testified during the State's case-in-chief. However, because Mr. Dansby's attorneys had prevailed on a motion to invoke the marital privilege, Mrs. Dansby was prohibited from testifying concerning a confession by her husband. After Mrs. Dansby's initial testimony, Jackie Cooper testified that, while he and Mr. Dansby were being held at the Nevada County jail, Mr. Dansby told him that he committed the murders. Mr. Cooper also admitted to a history of criminal activities, including "seven different stretches" in the penitentiary over the past twenty years. Other evidence introduced by the State included expert testimony matching (1) .22 shell casings found at the crime scenes with a shell casing found at Mr. Dansby's house; (2) the metal in the bullets used to kill the couple with the metal in the bullets found in Mr. Dansby's .22 rifle; and (3) the DNA from Mr. Dansby's blood sample with the DNA in semen recovered from the body of the murdered woman.

After the State rested its case-in-chief, Mr. Dansby testified in his own behalf. His attorneys examined him "with great care to make sure that none of the questions that we asked Mr. Dansby would . . . open the door to a waiver of the marital privilege." Before the State cross-examined him, the trial court ruled that the confession to Mr. Cooper constituted a waiver of the marital privilege and allowed the State to question Mr. Dansby concerning the alleged confession to his wife, which he denied. The State then recalled Mrs. Dansby as a rebuttal witness, and she testified that her husband had confessed to her that he "killed the kids," referring to the murdered young couple. Mr. Dansby's attorneys then called other defense witnesses in an unsuccessful attempt to show that another man was a suspect and could have murdered the couple.

## I. Standard of Review.

 The standard for review of a denial of a petition for postconviction relief has been often recited and was recently summarized in *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 485 (2001):

> The criteria for assessing the effectiveness of counsel were enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* provides that when a convicted defendant complains of ineffective assistance of counsel, he must show that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced his defense. Judicial review of counsel's performance must be highly deferential, and a fair assessment of counsel's performance under *Strickland* requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time. *Missildine v. State*, 314 Ark. 500, 863 S.W.2d 813 (1993). A reviewing court must indulge a strong presumption that the conduct falls within the wide range of reasonable professional assistance. *Id.*
>
> To prevail on any claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. *Thomas v. State*, 322 Ark. 670, 911 S.W.2d 259 (1995). This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* Secondly, the petitioner must show that the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* The petitioner must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt in that the decision reached would have been different absent the errors. *Id.*; *Huls v. State*, 301 Ark. 572, 785 S.W.2d 467 (1990). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Thomas*, 322 Ark. 670, 911 S.W.2d 259.

*Andrews v. State*, 344 Ark. at 611-12, 42 S.W.3d at 487-88. On appeal, a trial court's denial of postconviction relief will not be

reversed unless the ruling was clearly erroneous. *Peebles v. State*, 331 Ark. 188, 958 S.W.2d 533 (1998).

## *II. Deficient Performance of Counsel.*

Mr. Dansby claims that if he had not testified, the State could not have asked him whether he confessed to his wife and then called his wife as a rebuttal witness to his denial of the confession. He argues that because his counsel failed to adequately research and comprehend the law of waiver of marital privilege, they failed to grasp the risks of allowing him to testify. Thus, he asserts that his counsel were ineffective in allowing him to testify.

The first prong of the *Strickland* test is whether counsel's performance was deficient because Mr. Dansby testified in his own behalf. We have consistently held that whether or not a defendant testifies is not a basis for postconviction relief. "The accused has the right to choose whether to testify in his own behalf. Counsel may only advise the accused in making the decision. The decision to testify is purely one of strategy." *Chenowith v. State*, 341 Ark. 722, 734, 19 S.W.3d 612, 618 (2000) (citations omitted); *Pogue v. State*, 316 Ark. 428, 433, 872 S.W.2d 387, 389 (1994) ("This dispute over Pogue's taking the stand appears to be more a debate over trial strategy than evidence of ineffectiveness of counsel. Such matters do not form the basis of post-conviction relief."); *Wainwright v. State*, 307 Ark. 569, 580, 823 S.W.2d 449, 454-55 (1992) ("[T]he decision to advise a defendant not to take the stand, even if it proves improvident, is a tactical decision within the realm of counsel's professional judgment, and matters of trial tactics and strategy are not grounds for post-conviction relief."); *Scott v. State*, 303 Ark. 197, 201, 795 S.W.2d 353, 355 (1990) ("We might agree with Scott's argument that he had a right to testify in his own defense, but he has shown nothing to indicate the decision was other than a tactical one."); *Isom v. State*, 284 Ark. 426, 430, 682 S.W.2d 755, 758 (1985) ("[T]he decision to advise a client not to take the stand is a tactical one within the realm of counsel's professional judgment, and matters of trial tactics and strategy are not grounds for postconviction relief. Neither mere error on the part of counsel nor bad advice is tantamount to a denial of a fair trial."); *McDaniel v. State*, 282 Ark. 170, 174, 666 S.W.2d 400, 403 (1984) ("Even if petitioner would have been better off not taking the stand, mere mistakes on counsel's part do not establish the denial of a fair trial."); *Watson v. State*, 282 Ark. 246, 248, 667 S.W.2d 953, 955 (1984) ("Even if counsel's advice caused petitioner to take the stand, there is nothing

to indicate that she compelled him to testify. The decision to advise a client to testify is a tactical decision within the realm of counsel's professional judgment. Even if a decision proves unwise, matters of trial tactics and strategy are not grounds for postconviction relief.").

From the line of cases cited above, it is clear that an attorney's advice to a defendant on whether or not to testify and the defendant's decision to take or not take the stand are not grounds for postconviction relief predicated on ineffective assistance of counsel. Mr. Dansby, nonetheless, contends it was counsels' failure "to adequately research and comprehend the law of waiver of the marital privilege" that kept them from appreciating the risk of allowing him to take the stand and testify in his own behalf.

During the Rule 37.5 hearing, Mr. Bramblett testified that he and his partner, Jamie Pratt, had obtained a favorable ruling granting Mr. Dansby's motion to invoke marital privilege, thereby preventing Mrs. Dansby from testifying concerning the confession during the State's case-in-chief. The attorneys were familiar with *Perry v. State*, 280 Ark. 36, 635 S.W.2d 380 (1983), where the defendant waived his priest-penitent privilege by disclosing his confession to third parties. However, the disclosures in *Perry* were made to several people and were undisputed; whereas, in this case, the disclosure involved only one other person, and Mr. Dansby denied making the confession to Mr. Cooper. Mr. Dansby's attorneys had researched the issue, and Mr. Bramblett testified as follows at the postconviction hearing: "We were convinced that merely by taking the witness stand Mr. Dansby would not by that fact alone open the door to a waiver of the marital privilege." Mr. Bramblett further testified that Mr. Dansby wanted to testify in his own behalf and had always maintained his innocence.[1]

During Mr. Dansby's testimony on direct examination, his attorneys made sure that none of their questions would open the door to a waiver of the marital privilege. It was only after direct examination and before cross-examination that the trial judge ruled that the marital privilege had been waived by Mr. Dansby's alleged confession to Mr. Cooper. In fact, the question of whether a single alleged and disputed disclosure to a third party constituted waiver of privilege was not settled until this court's ruling in *Dansby I*. We held that the waiver of privilege by disclosure to a third party does not depend upon the disclosure being heard by a number of people

---

[1] Mr. Dansby did not testify at the Rule 37.5 hearing.

or upon the third party's testimony being disputed. *Dansby I*, 338 Ark. at 720, 1 S.W.3d at 416. Contrary to Mr. Dansby's allegations, his attorneys simply were not deficient just because they lost at trial and on appeal on an unsettled question of law. *See Gunn v. State*, 291 Ark. 548, 726 S.W.2d 278 (1987); *Brents v. State*, 285 Ark. 199, 686 S.W.2d 395 (1985).

 Viewed from counsel's perspective at the time, we hold that the performance of Mr. Dansby's counsel was not deficient. His counsel prevailed in asserting his marital privilege in a pretrial motion, and prevented Mrs. Dansby from testifying about the confession during the State's case-in-chief. At the time Mr. Dansby took the stand, the State had rested without the confession being admitted into evidence. It was not until Mr. Dansby's attorneys had concluded their direct examination that the trial court ruled, over defense counsels' objection, that the confession to Mr. Cooper constituted a waiver of the marital privilege. As a result, the State was permitted to raise the issue of Mr. Dansby's confession to his wife on cross-examination and to call Mrs. Dansby as a rebuttal witness. Even if in hindsight it appears that Mr. Dansby's decision to testify in his own behalf was improvident, that decision was a matter of trial strategy and tactics. As we explained in *Noel v. State*: "Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel." 342 Ark. 35, 41-42, 26 S.W.3d 123, 127 (2000). Accordingly, the trial court's ruling on this point was not clearly erroneous. In view of our holding that the performance of Mr. Dansby's counsel was not deficient, we need not address the prejudice requirement under *Strickland v. Washington, supra*.

Affirmed.