2009 Ark. 201

**Quenton GAYE, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–479.**

Supreme Court of Arkansas.

April 16, 2009.

Jeff Rosenzweig, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Leeann Irvin, Ass't Att'y Gen., Little Rock, for appellee.

DONALD L. CORBIN, Justice.

⌊₁Appellant Quenton Gaye appeals an order of the Pulaski County Circuit Court denying his motion for postconviction relief pursuant to Ark. R.Crim. P. 37. On appeal, Gaye argues that the circuit court erred in concluding that his trial counsel's failure to seek a forthwith order or continuance to procure a defense witness's presence at trial, or to proffer the testimony of that witness, was trial strategy and not a matter of ineffective assistance of counsel. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1–2(a)(7). We find no error and affirm.

Gaye was charged with capital murder and three counts of committing terroristic acts, stemming from a shooting that took place on April 13, 2005, near the corner of 26th and Arch Streets in Little Rock. Gaye was tried before a Pulaski County jury, and Gaye's defense at trial was that he had an alibi at the time of the shooting. Among the State's evidence against Gaye was the testimony of an eyewitness, Courtney Barnes. Barnes ⌊₂testified that he had known Gaye all his life and that Gaye was one of the shooters. To support his alibi claim, Gaye called his aunt, Diane Jones, as a witness. Jones testified that on the day of the shootings she took Gaye to her brother's house in southwest Little Rock between 12:00 p.m. and 1:00 p.m., while on her lunch hour. On cross-examination, however, the State questioned why Jones waited until Gaye's trial to indicate that he had an alibi that day. Gaye also produced the testimony of his uncle, Walygyden

Athtab,[1] that Gaye was at his house from sometime before 1:00 p.m. until later that evening.[2] Gaye was convicted of capital murder, for which he received a sentence of life imprisonment without the possibility of parole, and three counts of committing terroristic acts, for which he received a sentence of twenty years' imprisonment. This court affirmed his convictions and sentences in *Gaye v. State*, 368 Ark. 39, 243 S.W.3d 275 (2006).

He timely filed a petition for postconviction relief, pursuant to Rule 37, in the circuit court, alleging that his trial counsel had been so ineffective that his convictions and sentences should be vacated. In support of this contention, Gaye argued that his counsel's failure to seek a forthwith order or to seek a continuance in order to obtain the presence of defense witness, Melvin Taylor, or to proffer Taylor's testimony, was prejudicial because |₃Taylor's testimony that he did not see Gaye at the scene of the shooting would have resulted in a different outcome at trial.[3]

Hearings were held on Gaye's Rule 37 petition on January 14, 2008, and February 22, 2008. William McArthur, Gaye's counsel at trial, testified that Taylor initially appeared at the courthouse but disappeared prior to the time he was called as a witness. McArthur stated that he declined the court's offer to sign a forthwith order to bring Taylor into custody. McArthur then explained that Taylor told him that he knew Gaye by sight and that around the time of the shooting, he was driving by the scene and did not see Gaye there at all. McArthur then stated that he perceived Taylor to be a shaky witness, as he had a very questionable criminal history that would have come out at trial. According to McArthur, he felt uncomfortable with Taylor but subpoenaed him as a witness anyway; however, McArthur explained that he did not want to risk arresting him and having him brought to court in shackles. Upon cross-examination, McArthur explained that there had been testimony from only one witness who identified Gaye as the shooter and that Gaye's aunt and uncle testified at trial that Gaye was with them at the time of the murder.

Melvin Taylor testified that he was at the courthouse on the day of Gaye's trial, but left before he was called to testify because he was threatened by the victim's family. Taylor |₄stated that he would have testified truthfully that he was on his way to a liquor store at the corner of Roosevelt and Martin Luther King. He said that while on the way there, he witnessed some guys shooting but that he did not see the shooter in the courtroom. Taylor explained that he did not know Gaye at the time of the shooting, but he could say that Gaye was not one of them because the shooters were smaller people.[4]

The trial court issued an order on March 19, 2008, denying Gaye's Rule 37 petition. In determining that Gaye's trial counsel was not ineffective, the circuit court found that McArthur's decision not to seek a

---

1. Walygyden is also known as Tyrone Gaye.

2. The State called Napolean Talley, a witness to the shooting, who testified that the shooting took place sometime between 1:00 p.m. and 2:00 p.m., and Officer Jeff King, with the Little Rock Police Department, who testified that he received a call at 1:45 p.m. to go to the scene of the murder.

3. Gaye also argued that his counsel's failure to have Taylor present resulted in a violation of his rights of due process and confrontation under the Sixth and Fourteenth Amendments of the Arkansas Constitution. These constitutional arguments have been abandoned on appeal.

4. The record at trial reflected that Gaye stood approximately six feet, five inches tall and weighed over 300 pounds.

forthwith order and have Taylor brought to trial in shackles was a conscious decision and not an omission on the part of trial counsel. Further, the circuit court reasoned that Taylor's testimony would have been corroborative of the testimony of Jones and Athtab, and the decision to rely on Jones's and Athtab's alibi testimony, while unsuccessful, did not render counsel's representation of Taylor ineffective. The court ultimately concluded that counsel's failure to request a forthwith order or a continuance or to proffer Taylor's testimony "was not ineffective assistance of counsel but rather a strategic choice made by counsel during trial." From that order, comes the instant appeal.

On appeal, Gaye argues that the circuit court erred in denying his petition for postconviction relief after finding that his trial counsel's decision not to pursue the presence of a defense witness at trial was a matter of trial strategy and did not result in ineffective assistance of counsel. The State counters that the circuit court correctly denied Gaye's request for relief where the issue was one of trial strategy and where Gaye could make no showing of prejudice as required when seeking postconviction relief.

We do not reverse a denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Clark v. State*, 373 Ark. 161, 282 S.W.3d 801 (2008); *State v. Barrett*, 371 Ark. 91, 263 S.W.3d 542 (2007); *Greene v. State*, 356 Ark. 59, 146 S.W.3d 871 (2004). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Flores v. State*, 350 Ark. 198, 85 S.W.3d 896 (2002). In making a determination on a claim of ineffectiveness of counsel, the totality of the evidence before the fact-finder must be considered. *State v. Franklin*, 351 Ark. 131, 89 S.W.3d 865 (2002). Furthermore, we defer to the trial court's determination of credibility on Rule 37 appeals. *Barrett*, 371 Ark. 91, 263 S.W.3d 542.

Remaining mindful of this standard, we turn to the issue raised on appeal; namely, whether, based on the totality of the evidence, the circuit court clearly erred in holding that Gaye's trial counsel's decision to not seek a forthwith order, continuance, or otherwise proffer Taylor's testimony was a matter of trial strategy and did not constitute ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Sparkman v. State*, 373 Ark. 45, 281 S.W.3d 277 (2008). In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first show that counsel's performance was deficient. *Id.; Harrison v. State*, 371 Ark. 474, 268 S.W.3d 324 (2007). This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Sparkman*, 373 Ark. 45, 281 S.W.3d 277. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Second, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to under-

mine confidence in the outcome of the trial. *Id.*

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* Actual ineffectiveness claims alleging deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. *Barrett,* 371 Ark. 91, 263 S.W.3d 542. Additionally, the burden is on the petitioner to provide facts to support his claim of prejudice. *Sparkman,* 373 Ark. 45, 281 S.W.3d 277. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

In reviewing the circuit court's finding that the decision to not seek a forthwith order or a continuance, or to proffer Taylor's testimony, was a matter of trial strategy, we cannot say that the circuit court clearly erred. McArthur testified that he perceived Taylor to be a "shaky witness" with a criminal history that would have been brought out at trial. Thus, according to McArthur, he did not want Taylor brought to court in shackles. Clearly, this evidence supports the circuit court's determination that McArthur's decision was a strategic one and not an omission resulting in ineffective assistance of counsel. This court has recognized that trial counsel must use his or her best judgment to determine which witness will be beneficial to the client. *See Cook v. State,* 361 Ark. 91, 204 S.W.3d 532 (2005) (per curiam). Because of the subjective nature of professional judgment, questions of trial strategy are not grounds for relief under Rule 37. *Knappenberger v. State,* 283 Ark. 210, 672 S.W.2d 54 (1984) (per curiam).

We are unpersuaded by Gaye's reliance on *Wicoff v. State,* 321 Ark. 97, 900 S.W.2d 187 (1995), and *State v. Dillard,* 338 Ark. 571, 998 S.W.2d 750 (1999), to support his contention that Taylor was a crucial witness who could have undermined the State's case, and his counsel's failure to make sure that he was at trial satisfies the first prong of *Strickland.* In *Wicoff,* this court determined that trial counsel's decision to not call the grandmother of the defendant, when combined with his failure to request a rape-shield hearing to explore the relevance of the victims' past sexual conduct, was ineffective assistance of counsel. In so ruling, this court noted that the credibility of the victims was highly relevant, as their testimony was essentially the only evidence the State presented against the defendant. This court determined that trial counsel did not exercise reasonable professional judgment in failing to call the witness, who would have testified that one of the victims had admitted to her that she had fabricated the allegations against the defendant, where such testimony would have served to impeach the victims' credibility. Because this court determined that there was a reasonable probability that the outcome of the trial would have been different had counsel called this witness, we held that the defendant was denied the effective assistance of counsel.

Likewise, in *Dillard,* 338 Ark. 571, 998 S.W.2d 750, this court concluded that the circuit court correctly granted postconviction relief where trial counsel failed to interview and call a witness who would have testified that her sister, who was the victim, was not to be believed. Just as in *Wicoff,* 321 Ark. 97, 900 S.W.2d 187, the victim's credibility was of crucial importance where the State had no physical evidence to support its case. This court determined that while the decision not to

call the witness was one of strategy, it resulted in ineffective assistance of counsel because counsel's decision was not supported by reasonable professional judgment.

The instant case is distinguishable. First, this was not a case where the State's evidence against the accused was lacking. The State presented the testimony of an eyewitness who positively identified Gaye as being one of the shooters. Second, McArthur called two witnesses who both provided alibis for Gaye. This was not a situation where there were no other witnesses who could cast doubt on the State's case. Finally, McArthur's explanation that he chose not to seek the forthwith order and have Taylor brought to court in shackles, where Taylor had a criminal record, is supported by reasonable professional judgment. Gaye simply cannot identify any act' or omission that overcomes the presumption that McArthur's conduct fell within the wide range of reasonable professional assistance. *See, e.g., Harrison,* 371 Ark. 474, 268 S.W.3d 324. Accordingly, the circuit court's order denying Gaye's request for postconviction relief is affirmed.

IMBER, J., not participating.