2011 Ark. 489

**Gary Lonnie WILLIAMS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–178.**

Supreme Court of Arkansas.

Nov. 17, 2011.

John Wesley Hall, Jr., Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Leaann J. Irvin, Little Rock, for appellee.

ROBERT L. BROWN, Justice.

This is an appeal from the denial of a petition for postconviction relief filed under Rule 37.1 of the Arkansas Rules of Criminal Procedure. The appellant, Gary Lonnie Williams (Williams), appeals the denial on two grounds. We find no error and affirm.

The facts supporting his conviction and sentence, as set out by the court of appeals, are as follows. On the evening of January 9, 2006, Marvin Perkins and Williams were at Perkins's apartment in Conway with a number of guests. Williams agreed to take one of the guests home. When he did not return the vehicle that he was driving to its parking spot, Perkins went outside to investigate. He saw Williams having a conversation with someone. Perkins returned to his home, thinking that Williams would soon return. Perkins waited a few minutes and walked outside again. This time, he saw Williams

walking toward him with Heath Rodgers following closely behind. Williams told Perkins that Rodgers had a gun, which had been stolen from a pawn shop. Perkins had a gun as well. When Williams and Rodgers went inside the residence, Rodgers said that he wanted to talk about a car. Perkins, who had had problems with Rodgers in the past, asked Rodgers to leave. Rodgers refused to do so. When Perkins attempted to slam the door in Rodgers's face, Rodgers kicked the door open, and the argument became more heated. Rodgers and Perkins soon began fighting and hitting each other with their guns. Williams eventually joined the fight. While they were fighting, Rodgers dropped his weapon. Williams and Perkins gained the advantage over Rodgers and began taking turns beating him with Perkins's gun. They beat him multiple times, and he died. Perkins pled guilty to a number of charges, including second-degree murder. He was sentenced to thirty years in prison for second-degree murder and testified against Williams.

On March 9, 2007, a jury found Williams guilty of first-degree murder, possession of drug paraphernalia, and possession of marijuana and sentenced him to forty years for first-degree murder, ten years for possession of drug paraphernalia, and one year for possession of marijuana, the sentences to run concurrently. His convictions were affirmed by the court of appeals. *See Williams v. State*, CACR07–945, 2008 WL 4277461 (Ark.App. Sept. 17, 2008) (unpublished).

On December 5, 2008, Williams filed his petition for postconviction relief under Arkansas Rule of Criminal Procedure 37.1. In his Rule 37 petition, he alleged that his trial counsel was ineffective for failing to call witnesses and for misad-

vising him concerning his right to testify.[1] On his right to testify, Williams also claimed that he had a fundamental right under both the federal constitution and the state constitution to testify in his own defense and that it was error not to put his alleged waiver of that right on the record.

On September 29, 2010, a hearing was held on Williams's Rule 37 petition. At the hearing, Williams presented the testimony of himself; Lonnie Williams, his father; Crystal Williams, his ex-wife; Donna Moore, his mother; Sue Sherwood; Jere Orvin; and Susan Williams. The State presented the testimony of Robert Newcomb, Williams's lead trial counsel. On November 18, 2010, the trial court entered an order denying Williams's Rule 37 petition. In that order, the court made the following findings: (1) calling a witness is a strategy decision by defense counsel and, therefore, is not an issue for which relief is granted under Rule 37; and (2) acting with the advice of counsel, Williams elected to stand on his Fifth Amendment right to remain silent and did so after proper consultation. The court concluded that Williams's rights were not violated in such a manner as to give rise to a basis for granting relief pursuant to Rule 37. It is from this denial of his Rule 37 petition that Williams brings this appeal.

This court does not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous. *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Gaye v. State*, 2009 Ark. 201, 307 S.W.3d 1. Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Montgomery*, 2011 Ark. at 3, 385 S.W.3d at 193–94.

In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first show that counsel's performance was deficient. *Gaye*, 2009 Ark. at 6, 307 S.W.3d at 4. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The petitioner must also show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* In doing so, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, which means that the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to undermine confi-

---

1. Williams also argued that his trial counsel was ineffective for failing to put on Rule 404(a)(2) and 404(b) evidence of the victim's propensity to commit violence. Williams further argued that he was entitled to postcon-viction relief based on newly discovered evidence. These arguments are not raised on appeal; therefore, they are deemed abandoned. *Jordan v. State*, 356 Ark. 248, 147 S.W.3d 691 (2004).

dence in the outcome of the trial. *Id.* at 6, 307 S.W.3d at 5.

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* Actual ineffectiveness claims alleging deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. *Id.* Additionally, the burden is on the petitioner to provide facts to support his claim of prejudice. *Gaye*, 2009 Ark. at 7, 307 S.W.3d at 5. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

For his first point on appeal, Williams urges that he was denied effective assistance of counsel, because his trial counsel failed to call several witnesses to testify on his behalf. He argues that these witnesses would have testified that Marvin Perkins admitted that he was the sole actor in the death of Rodgers. As a result, he contends that the trial judge erred in concluding that his trial counsel's decision to call or not to call several witnesses was a matter of trial strategy and not a proper basis for granting postconviction relief under Rule 37.

Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). Thus, even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment. *Id.* The decision whether to call particular witnesses is a matter of trial strategy that is outside the purview of Rule 37. *Id.* Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Id.* When assessing a trial counsel's decision not to call a particular witness, this court must take into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Id.*

Williams contends that his trial counsel was ineffective for calling only one out of six witnesses at trial who heard Marvin Perkins admit that he was the sole actor in the death of Heath Rodgers. He argues in his brief before this court that "every person who heard Perkins' admissions should have been called to the stand at the trial because that would have definitely made the jury far more comfortable than with the lone Sue Sherwood's testimony." He further maintains that each witness should have been called, because when the case evolves into a "swearing match," it is necessary to call all the witnesses counsel is able to call in order to bolster the defendant's version of events.

Williams offers the following evidence in support of his claim. At the Rule 37 hearing, Lonnie Williams, Williams's father, testified that he, his wife, and Williams's ex-wife had a conversation with Perkins after Williams was arrested. Perkins told him that Williams saved his life and the lives of all who were in the apartment that night. Lonnie Williams admitted on cross-examination that Perkins testified to the same story when he was cross-examined at trial. Lonnie Williams also testified that he was told by defense counsel that he would not be called as a witness at trial because of an allegation that he had of-

fered to buy a car for a detective presiding over his son's case.

Crystal Williams, Williams's ex-wife, also testified at the Rule 37 hearing that during this conversation with Perkins, he admitted that he was the one who killed Rodgers and that Williams was a hero. She testified that Perkins told her that Williams had nothing to do with the beating. She added that although she was subpoenaed, she was told that she would not be called as a witness, because she was Williams's wife.

Donna Moore, Williams's mother, testified at the hearing that Perkins described the events of the night in question and admitted to her that he hit Rodgers twenty-four to twenty-five times. He also told Moore that Williams saved his life. Moore testified that she was present at trial to testify and that she did not know she was not going to testify until she was permitted to enter the courtroom during Sue Sherwood's testimony.

Susan Williams, who was present at Perkins's house the night of the murder but left prior to the escalation of the fight, testified at the hearing that Perkins told her that he had killed Rodgers and not Williams. She stated that although she was subpoenaed, she was not called to testify at trial. She testified that she was not told why she was not called as a witness.

Sue Sherwood, the only witness who testified for the defense at trial, testified at the hearing that she and her husband, Stan Sherwood, went to Perkins's residence and had a conversation with him some time after he was arrested. She and her husband were looking at the house as a possible rental property. She testified that Jere Orvin, Connie Orvin, and Crystal Williams were also present for this conversation. Sherwood stated that she was told the night before she testified that she would be the only witness. She testified that Williams's counsel told her a "woman would be better for the jury." She admitted that the other four witnesses' testimony would have been basically the same as hers. It was stipulated by counsel at the Rule 37 hearing that Stan Sherwood was available by phone to testify, but that his testimony would be the same as Sue Sherwood's testimony.

Jere Orvin testified at the hearing that he was present at Perkins's house when he described the events of the night in question. Orvin testified that Perkins admitted to killing Rodgers and that Williams did not have any part in it. Orvin stated that he was not contacted by Williams's defense counsel and did not testify at his trial.

In response, the State presented the testimony of Williams's lead trial counsel, who testified that he discussed the matter with his co-counsel[2] about whether to call these witnesses at trial. They discussed, he testified, about whether the witnesses' testimony would be cumulative and whether the witnesses had certain problems that would hurt their credibility. Trial counsel stated that the decision about whether to call these witnesses was made after conducting a balancing test, which included weighing the helpfulness of the witnesses' testimony versus the potential harm it could cause to Williams. He also testified that he felt the number of witnesses called does not necessarily have a greater impact on the jury than one good witness.

In response to questions about each witness, counsel testified that Lonnie Williams was not called as a witness, because, as Williams's father, he was not an unbiased witness. He further testified that Lonnie Williams believed that the

---

2. Co-counsel did not testify at the Rule 37 hearing.

State was unlawfully bringing charges against his son and that he said several times that his son "did society a favor by killing a drug dealer." He explained that he did not think Lonnie Williams's testimony would be helpful to Williams, if those statements came out on the stand. Counsel also noted that he did not call Donna Moore, Williams's mother, or Crystal Williams, Williams's ex-wife, because they were not present for the fight and were not disinterested witnesses. He further testified that the decision was made not to call Susan Williams as a witness because she had a drug problem in addition to the fact that she too was not present during the fight.

Trial counsel testified, in addition, that there were really only two disinterested witnesses for purposes of the trial—Stan and Sue Sherwood—because the rest of the witnesses who heard Perkins's statements about his involvement in the beating had some relationship with Williams. He added that he called Sue Sherwood as a witness because she was objective. He explained that he did not call Stan Sherwood, because he felt that his testimony would have been cumulative. Counsel also noted that at that point in the trial, Perkins had already admitted during his testimony for the State that in his opinion, Williams had saved his life, which added to his theory that the testimony of certain witnesses along the same line would have been cumulative. As a final point, counsel testified that he did not recall ever speaking with Jere Orvin and that without knowing the witness's background, he could not say whether he would have put him on as a cumulative witness.

The bases articulated by trial counsel, and recognized by the trial court, for not calling these witnesses were sound. This court has recognized that trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Gaye,* 2009 Ark. at 7, 307 S.W.3d at 5. The value of Williams's family members' testimony, in trial counsel's opinion, was undermined by their relationship to Williams. As counsel testified and the trial court concluded, much of Susan Williams's testimony had already been conveyed by Perkins during his testimony for the State. Furthermore, the credibility of Susan Williams's testimony was similarly undermined by the fact that she had a drug problem. Additionally, any testimony concerning Perkins's admissions about his and Williams's involvement in the beating would have been cumulative in light of Sue Sherwood's testimony and Perkins's admissions. This court has said that omission of a witness when his or her testimony is cumulative does not deprive the defense of vital evidence. *See, e.g., Coulter v. State,* 343 Ark. 22, 31 S.W.3d 826 (2000); *Helton v. State,* 325 Ark. 140, 924 S.W.2d 239 (1996).

Moreover, the cases cited by Williams in support of his argument that it was unreasonable strategy to call only one of six witnesses are clearly distinguishable from the facts of the instant case. For example, Williams cites the Eighth Circuit's decision in *White v. Roper,* 416 F.3d 728 (8th Cir. 2005) and the Ninth Circuit's decision in *Lord v. Wood,* 184 F.3d 1083 (9th Cir. 1999), where the courts found that counsels' failure to call certain witnesses resulted in ineffective assistance of counsel. These cases, however, turned on the fact that trial counsel failed to investigate the witnesses properly and could not offer a compelling justification for failing to call the witnesses. In contrast, counsel in the instant case interviewed each of the potential witnesses, with the exception of Jere Orvin, considered the usefulness of their testimony, weighed the potential harm of

putting each witness on the stand, and made the strategic decision to call or not call each witness. Even if counsel had interviewed Jere Orvin, his account of Perkins's statement did not differ in any respect from the testimony offered by Sue Sherwood. The reasons offered for not calling witnesses—bias, cumulative, credibility—were persuasive to the trial court and, we conclude, supported by the evidence in the record.

As trial counsel's decision to call witnesses was a matter of trial strategy, we affirm the ruling of the trial court below. Because of our conclusion that the performance of Williams's trial counsel was not deficient, we need not address the prejudice requirement, which is the second prong under *Strickland. See Dansby v. State*, 347 Ark. 674, 66 S.W.3d 585 (2002).

For his second point on appeal, Williams contends that his trial counsel was ineffective for misadvising him not to testify.[3] He argues that he had a constitutional right to testify in his own defense which he asserts he would have otherwise exercised. Williams claims that he wanted to testify in his own defense, but that his trial counsel decided otherwise without first obtaining a waiver from him. He further contends that a waiver of his fundamental right to testify should have been made on the record and that this failure to make this record was ineffective assistance of counsel.

According to Williams's testimony at the Rule 37 hearing, he did not know that his trial counsel would not introduce his testimony until counsel rested for the defense. He contends that his trial counsel did not ask for a recess or discuss what was about to transpire; he simply rested. Williams's trial counsel testified that he and his co-

counsel had several conversations with Williams about his testimony. He stated that he went over Williams's testimony with him several times, and Williams would always "flub it up." He also testified that Williams had admitted previously that he hit Rodgers and, when questioned by his counsel about the length of time that the beating went on, could not maintain a consistent or credible answer as to why he continued beating Rodgers. Counsel testified that the decision not to testify was made, after discussing the matter with Williams. He added that he told Williams that he would put him on the stand but that it was a gamble in light of his temper and his "real dislike" for the assistant prosecutor in his case. Counsel further testified that Williams ultimately made the decision not to testify himself at some point during the trial.

This court has consistently held that whether a defendant testifies is not a basis for postconviction relief. *Dansby*, 347 Ark. at 679, 66 S.W.3d at 588. The accused has the right to choose whether to testify on his own behalf. *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000) (per curiam). Counsel may only advise the accused in making the decision, and the decision to testify is purely one of strategy. *Id.*

The testimony is conflicting on the issue of whether Williams made the decision, after his counsel's advice, to refrain from testifying or whether counsel misled Williams into believing that he would testify and then decided on his own to not have Williams do so. The trial court found that the record reflected that there was a consultation between co-counsel with Williams present prior to the resting of his case.

---

**3.** It is somewhat unclear whether Williams is arguing that his trial counsel misadvised him about testifying or prevented him from doing

so. Under either scenario, our analysis and conclusion remain the same.

The trial court, thus, concluded that Williams, after consulting with his counsel, did not waive his right to testify but chose to stand on his constitutional right to remain silent. When that right is exercised in consultation with counsel, the trial court determined, it becomes a matter of trial strategy. The trial court resolved the conflict between the testimony and found that Williams decided not to testify based on advice of his counsel.

It is axiomatic that credibility determinations are within the province of the trial court. *Chenowith,* 341 Ark. at 734, 19 S.W.3d at 618. Moreover, it is clear that an attorney's advice to a defendant on whether to testify and the defendant's decision to take or not take the stand are not grounds for postconviction relief predicated on ineffective assistance of counsel. *Dansby,* 347 Ark. at 680, 66 S.W.3d at 589.

Williams, however, also contends that it was his trial counsel's failure to make a record of the waiver of his fundamental right to testify that amounts to ineffective assistance of counsel. Williams cites several pages of cases from other jurisdictions in support of his contention that a record must be made on the question of the defendant's waiver of his right to testify. He misconstrues, though, the holdings of many of these case, because they merely conclude that a defendant has a fundamental right to testify and that only the defendant may waive that right. *See, e.g., United States v. Ortiz,* 82 F.3d 1066, 1070 (D.C.Cir.1996) ("We, like our sister circuits and the state courts, have no doubt that a criminal defendant has a fundamental constitutional right to testify that is personal to the defendant and cannot be waived by counsel or the court."); *United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir. 1992) ("[W]e hold that a criminal defendant has a fundamental constitutional right to testify in his behalf, that this right is personal to the defendant, and that the right cannot be waived by defense counsel."). In fact, it is true that the Supreme Court of the United States has held that a criminal defendant has a right to testify in his own behalf. *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The Supreme Court has not held, however, that it is ineffective assistance of counsel when trial counsel fails to put the waiver of the defendant's right to testify on the record.

While it clear that the right to testify is a fundamental right that may only be exercised by the defendant, Williams concedes that neither this court nor the Supreme Court of the United States has held that a record must be made evidencing a defendant's waiver of his right to testify and that failure to do so constitutes ineffective assistance of counsel. Although it may be the practice of some counsel to confirm on the record that the defendant's waiver of his or her right to testify is voluntary and knowing, there is no mandated obligation to obtain an on-the-record waiver either by this court or the Supreme Court of the United States. In light of the fact that neither this court nor the Supreme Court requires that a record of a defendant's waiver be made in order to protect his or her constitutional right to testify, we decline to hold that failure to make a record of Williams's waiver of his right to testify constitutes ineffective assistance of counsel. We hold, therefore, that there was no defective representation by trial counsel in this regard.

In sum, we hold that the trial court did not clearly err in denying Williams's petition for Rule 37 relief.

Affirmed.