Cite as 2020 Ark. App. 480

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-20-185

| | |
|---|---|
| FRANK PAUL CAMPBELL<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** October 21, 2020<br><br>APPEAL FROM THE CARROLL COUNTY CIRCUIT COURT, EASTERN DISTRICT<br>[NO. 08ECR-14-92]<br><br>HONORABLE GARY ARNOLD, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Frank Paul Campbell appeals from the denial of his petition for postconviction relief. After a jury trial in the Carroll County Circuit Court, appellant was convicted of two counts of second-degree sexual assault and one count of sexual indecency with a child. He was sentenced to thirty years' imprisonment. The charges were based on allegations that appellant inappropriately touched his two teenage stepdaughters and that he sent the younger stepdaughter an explicit story he wrote about a sexual relationship between a stepfather and stepdaughter. This court affirmed appellant's convictions in *Campbell v. State*, 2017 Ark. App. 59, 512 S.W.3d 663. Appellant subsequently filed a petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37 asserting seven claims of ineffective assistance by his trial counsel, Chris Flanagin. The circuit court held an evidentiary hearing and denied appellant's petition. We reversed and remanded for the

circuit court to make sufficient written findings in accordance with Rule 37.3(c). *Campbell v. State*, 2019 Ark. App 409. The circuit court entered an amended order, and appellant now appeals the court's rulings on five of his claims. We affirm.

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Kauffeld v. State*, 2019 Ark. App. 29, 569 S.W.3d 348. A finding is clearly erroneous when the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that the circuit court made a mistake. *Id*.

The benchmark for judging a claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668 (1984). Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance of counsel must show that his counsel's performance fell below an objective standard of reasonableness. *Kauffeld*, *supra*. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id*. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id*.

2

Additionally, conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id.*

## I. *Representation of Appellant's Wife*

Appellant first argues that counsel was ineffective because counsel had conflicts of interest involving appellant's wife, Amy Campbell. Amy's daughters are the victims in this case, and she testified for both the State and the defense. Amy was present at meetings between appellant and counsel, and during the pendency of appellant's case, counsel represented Amy in a case brought by the children's father. After appellant's trial, counsel sought a waiver from appellant so that he could represent Amy in a divorce action against appellant. Appellant argues that counsel's representation of Amy violated his duty to appellant and that counsel placed his attorney-client relationship with a State witness above his relationship with his client. Appellant contends that due to counsel's representation of Amy, counsel failed to cross-examine her on the potential liability of having filed a false police report after she informed him of inconsistencies in a detective's report. He also claims that counsel failed to attempt to point out any inconsistencies in the victims' testimony.

To prevail on a claim of ineffectiveness based on counsel's conflict of interest, appellant must demonstrate the existence of an actual conflict of interest that affected counsel's performance as opposed to a mere theoretical division of loyalties. *Rackley v. State*, 2014 Ark. 39. Appellant has the burden of proving a conflict of interest and showing its adverse effects. *Id.* However, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. *Id.*

3

Counsel testified at the Rule 37 hearing that appellant wanted Amy at their meetings and that his representation of Amy did not create a conflict of interest because Amy did not believe the charges against appellant were true. The circuit court found that appellant failed to show an actual conflict and failed to cite any specific instances in which the alleged conflict adversely affected him. Appellant has still not specified what adverse effects occurred, such as what testimony counsel could have elicited from Amy on cross-examination had he not represented her. Amy testified at the Rule 37 hearing that she had informed counsel of inaccuracies in the police report, but she did not remember anything specific that she had a problem with. Counsel testified that arguing there was a faulty investigation based on inaccuracies in police reports was not a winning theory because the victims, not the detective, were going to testify about their allegations. Appellant has also not identified any inconsistencies that counsel failed to identify in the victims' testimony. Accordingly, we conclude that appellant has failed to show that a conflict of interest actually affected counsel's performance.

## II. *Failure to Object During Closing Arguments*

Appellant next argues that counsel was ineffective for failing to object and move for a mistrial or a curative instruction after the prosecutor made three inflammatory remarks during closing arguments. When it is alleged that counsel was ineffective for the failure to make a motion or an argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel. *Blackwell v. State*, 2017 Ark. App. 248, 520 S.W.3d 294. A reversal of a judgment due to remarks made by counsel during closing arguments is

4

rare and requires that counsel make an appeal to the jurors' passions and emotions. *Houghton v. State*, 2015 Ark. 252, 464 S.W.3d 922. Experienced advocates might differ about when, or if, objections are called for since, as a matter of trial strategy, further objections from counsel may result in comments seeming more significant to the jury. *Id.* Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). Here, the circuit court found that appellant had failed to demonstrate that counsel's decision not to object was an error and not a strategic choice as counsel testified. The court further found that appellant had failed to demonstrate that any motions had a likelihood of success or that he suffered any prejudice.

Appellant contends that the prosecutor made two improper statements in the following portion of her rebuttal closing argument:

> Mr. Flanagin talked a lot about how Frank's gotten to be 40 and really hadn't done anything wrong. Did you hear somebody testify to that? Because I didn't. I didn't hear anybody get on the stand and say he's not done anything wrong, that he doesn't have a criminal history. I sure didn't hear the two daughters he's got get on the stand and say, "Well, nothing happened to us." I didn't hear one person get on the stand and say, "Frank's a good guy."
>
> Do not assume, because you didn't hear something bad about his past in here, that there isn't anything there. Okay? We're talking about facts that were presented to you. Those are the things you are going to rule on.

Appellant claims that the prosecutor improperly shifted the burden when she said that appellant's own daughters did not testify, and she implied that appellant had committed other offenses when she stated that the jury could not assume there was nothing bad in his past. Counsel testified that based on the way the prosecutor finished the statement quoted

5

above, it did not rise to the level to warrant his objecting and drawing more attention to the statements. Appellant recognizes counsel's reasoning but contends that after "numerous inflammatory statements," "it crosses from strategy to ineffective assistance." Appellant's allegations are conclusory and are not supported by convincing argument or citation to authority. *Turner v. State*, 2016 Ark. 96, 486 S.W.3d 757. Furthermore, we do not recognize cumulative error in allegations of ineffective assistance of counsel. *Id.* Accordingly, appellant has failed to show that counsel's failure to object fell outside the wide range of permissible professional legal conduct.

The third alleged improper comment occurred when the prosecutor stated the following to the jury:

> Now's the time to stand up and look Frank Campbell in the face and say, "We adhere to society's rituals. You don't get to have sex with little kids. You don't get to send them sexually exploitive material in an effort to get a sexual relationship with them. You don't get to go into their rooms at night and touch their butts. You don't get to rub their breasts in their own home. It's not okay."

Appellant argues that the remark about "sex with little kids" improperly appealed to the jurors' passions and emotions because he was not charged with having sex with children. Although appellant was not charged with having sex with the teenage victims, he was charged with engaging in sexual contact with them and with soliciting a thirteen-year-old child to engage in sexual intercourse, deviate sexual activity, or sexual contact. The supreme court has held that "send a message" themes from the prosecutor in closing arguments are not improper. *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249. Considering the conduct with which appellant was charged, we hold that the message regarding "sex with little kids" is not an egregious misstatement.

Furthermore, as in *Houghton, supra*, the jury here was instructed that remarks made during closing arguments are not evidence and to disregard any argument, statements, or remarks of the attorneys that had no basis in the evidence. We hold that the circuit court did not err in finding that appellant failed to demonstrate defective representation that prejudiced his defense such that he was deprived a fair trial.

### III. *Failure to Make a Proper Directed-Verdict Motion*

Appellant next argues that counsel was ineffective for failing to preserve a sufficiency-of-the-evidence argument on his conviction for sexual indecency with a child. In our opinion affirming appellant's convictions, we held that appellant's sufficiency argument was not preserved for appellate review because he had failed to make a specific motion for directed verdict at the close of the State's case. To prevail on a claim of ineffective assistance of counsel on the basis of counsel's failure to preserve an issue for appeal, a petitioner must show that, had the issue been preserved, the appellate court would have reached a different decision. *Strain v. State*, 2012 Ark. 42, 394 S.W.3d 294. In the case of a directed-verdict motion, the petitioner must demonstrate that the appellate court would have found that the evidence adduced at trial was insufficient to support a conviction and would have overturned the conviction for that reason. *Id.*

Appellant fails to address the evidence and explain why it was insufficient to support his conviction. He states only that the evidence was "not sufficient." This argument is conclusory and cannot be the basis for postconviction relief. *Kauffeld, supra.* When an appellant does not allege in what regard the circuit court's rulings on ineffective-assistance

7

claims were clearly erroneous, his arguments fail. *Flemons v. State*, 2016 Ark. 460, 505 S.W.3d 196.

IV. *Failure to Interview Witnesses, Call Certain Witnesses, and Investigate the Case*

Appellant argues that counsel was ineffective for failing to call witnesses during the sentencing phase or even investigate whether suggested witnesses had any beneficial testimony to offer. He specifically argues that he would have benefited from the testimony of his sister, Sheryl Ruff, and his friend, Shawn Wright. Ruff testified at the Rule 37 hearing that she would have testified that appellant was a good father; Wright said that he would have testified about occasions when appellant had helped him. Both were cross-examined about their knowledge of appellant's two prior felony convictions and a prior harassment conviction of a "sexually threatening nature." Counsel testified that he did not believe the witnesses' testimony would add anything "worthwhile" and that it would open the door to "egregious" evidence about appellant's prior sexual-harassment conviction, which would make him "look terrible" to the jury. The circuit court found that the witnesses would have been subject to cross-examination by the State that would have elicited damaging testimony about appellant's prior convictions that would otherwise have been inadmissible. Accordingly, the court found that appellant did not demonstrate that counsel's performance fell below the required standard or caused prejudice.

Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228. Thus, even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is

a matter of professional judgment. *Id.* The decision whether to call particular witnesses is a matter of trial strategy that is outside the purview of Rule 37. *Id.* Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Id.* When assessing a trial counsel's decision not to call a particular witness, we must take into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Id.*

Counsel articulated sound bases for not calling these witnesses as a matter of trial strategy; thus, the circuit court's ruling is not clearly erroneous. In determining whether a defendant is prejudiced by counsel's decision not to introduce certain evidence, it is necessary to consider all the relevant evidence the jury would have had before it as a result of a decision to introduce the evidence, not solely the evidence the defendant claims was mistakenly kept out. *State v. Thompson*, 2017 Ark. 50, 510 S.W.3d 775. Appellant argues that counsel could have made motions to try to prevent the State from asking the witnesses questions about the harassment conviction, but he provides no legal basis for such a motion. Accordingly, he has not shown that counsel's performance was deficient and resulted in prejudice.

V. *Failure to Move for a Severance of the Charges or to Request a Continuance*

Appellant argues that counsel should have taken action when an amended information was filed thirty-five days before trial. The amended information added three counts of sexual indecency with a child based on the allegation that appellant sent a sexual

story to his stepdaughter to solicit her to engage in sexual activity with him. Appellant first argues that counsel should have moved for a continuance when the amended information was filed. He claims that he was "days away" from being able to have his charges dismissed for violation of his speedy-trial rights; that counsel could have made a good-faith argument that the late filing changed the nature of the defense; that counsel erroneously assumed that the defense would have been forced "to take the time"; and that the State would have been forced to try only the original charges to not be in violation of his speedy-trial rights.

Counsel testified that he did not move for a continuance when the sexual-indecency charges were added because appellant was adamant that he wanted his trial without delay and because counsel could not claim unfair surprise. Counsel said that the prosecutor had told him months before that the charges were going to be added. Counsel said that a continuance would have been charged to the defense and that the new charges did not alter his trial strategy.

Appellant contends that the continuance would have benefited him because it would have created speedy-trial issues for the State, but his claims concerning speedy trial and who the time would be charged to are conclusory and without citation to authority. Accordingly, they provide no basis for relief.

Appellant also contends that counsel should have moved to sever the charges. Counsel testified that he chose not to move for severance because the same evidence would be admitted in both trials under the pedophile exception, and appellant was likely to be convicted and face consecutive sentences and habitual-offender status at a second trial. Appellant argues that counsel did not consider that appellant may have wanted to testify on

only some of the charges. He also argues that counsel could have tried to keep the story evidence out of a trial on the sexual-assault charges. Even if the story was admissible, appellant argues that counsel could have sought jury instructions to limit the use of evidence of one charge to support a conviction on the other.

In support of his argument, appellant cites only a case from the Supreme Court of Washington, *State v. Sutherby*, 204 P.3d 916 (Wash. 2009), which held that counsel had no legitimate strategic or tactical reason for failing to move to sever charges of child rape and molestation from charges of possession of child pornography. The court held that it was highly likely that the evidence of possession of child pornography would not have been admissible in a separate trial for child rape and molestation because it did not involve the same victim. Here, however, if the sexual-assault charges were severed from the sexual-indecency charges, both trials would have involved the same victim, appellant's younger stepdaughter. Appellant cites no authority to rebut counsel's claim that the evidence of each crime would have been admissible in separate trials under Arkansas's pedophile exception to Rule 404(b).

Regarding counsel's strategic decision, a similar decision not to seek a severance was made in *Chambliss v. State*, 2011 Ark. 12, in order to avoid a harsher sentence at the second trial. The supreme court held that counsel's statements established that the decision was a matter of trial strategy and that it was supported by reasonable professional judgment. The same is true here. Accordingly, the circuit court did not err in denying postconviction relief.

Affirmed.

HARRISON and HIXSON, JJ., agree.

*Autumn Tolbert, Attorney at Law*, by: *Autumn Tolbert*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.