UNITED STATES FIDELITY & GUARANTY
COMPANY *v.* Coy C. PARK

5-6224                                           491 S.W. 2d 791

Opinion delivered March 26, 1973

*Gannaway, Darrow & Hanshaw,* for appellant.

*Holmes & Holmes,* for appellee.

LYLE BROWN, Justice. Appellant sought judgment on the basis of its ownership of a promissory note purportedly executed by appellee. The trial court, sitting as a jury, held that appellant failed to meet its burden of proof that appellee did in fact sign the note. We shall refer to appellant as U.S.F.& G. and to appellee as Park.

On March 7, 1960, Park purchased from Kern-Limerick, Inc., a large crawler tractor for $14,557.92. U.S.F.&G. contends that Park executed a promissory note for part of the down payment, which note was negotiated to First National Bank of Little Rock; that after the bankruptcy of Kern-Limerick it was discovered by the bank that Kern-Limerick had inserted nonexistent equipment in several notes held by the bank. In fact it is undisputed that the note in question referred to a Model E-24 Winch, which was found to be nonexistent. Park insists that he did not make a note for part of the down payment; in fact he contends that he made the full down payment in cash, which amounted to $2400. U.S.F.&G., under a blanket bond, made First National whole and by this suit the insurance company seeks reimbursement.

On behalf of U.S.F.&G., Davies B. Campbell testified. He said he was the senior lending officer of First National in 1960 and handled the bank's dealings with Kern-Limerick, which company had a line of credit of $300,000; that in the course of his employment he was called on to compare hundreds of signatures; that he had compared the signature on the note in question with two known signatures of Park; and that in his

opinion the signature on the note was genuine. Campbell said he wrote Park in May 1960 and instructed him to make his note payments directly to the bank. Campbell said he thereafter recieved a telephone call from Park wherein Park explained that he did not own a winch, that the note in question was a side note for part of a down payment on a tractor; and that Park intended to pay the note. Campbell also related that he inspected Kern-Limerick's work sheet on the Park transaction and that it showed a down payment of $1000 and a note for $1400. On cross-examination the witness conceded that Kern-Limerick negotiated several irregular notes to First National; in fact the total of all irregular notes ran slightly over $125,000. He conceded that in one instance it was established that another note negotiated to them by Kern-Limerick was a claimed forgery.

Coy Park insisted that he made a cash down payment of $2400. He exhibited his conditional sales contract which recited that he had made a down payment in that amount. The contract further recited that he owed a balance of $12,157.92, payable in monthly installments. (Kern-Limerick negotiated that contract to C.I.T. Corporation at Memphis.) Park liquidated that note. He was shown the signature on the note sued on herein and admitted that it "looks like mine" but he insisted that he did not sign that note. Park further testified that when he received a letter from First National regarding payments on the note, Park telephoned the bank and explained that he did not owe it any money.

U.S.F.&G. first contends there is no substantial evidence from which the court could render a verdict for Park. We do not agree. In addition to the positive testimony of Park that he did not sign the note, he produced the original conditional sales contract which recited a down payment of $2400. Also, the court had a right to consider the likelihood that some official of Kern-Limerick could have forged the signature; this in view of the divers irregular notes negotiated by Kern-Limerick in an amount exceeding $125,000, and in two instances there were claims for forged notes.

Secondly, it is contended for reversal that the court refused to consider the signature testimony of Mr.

Campbell as that of an expert. When Park's counsel objected to Mr. Campbell testifying as an expert the court said Campbell could give his opinion based on his experience. That statement of qualification did not mean that the court was raising the status of Mr. Campbell to that of a professional in handwriting identification. Even had witness Campbell qualified as a professional, the court would not be bound to accept his testimony as conclusive. We have said it is within the province of the fact finder to determine the value and weight to be given to the testimony of experts. *Home Indemnity Co.* v. *Jelks,* 187 Ark. 370, 59 S.W. 2d 1028 (1933).

Finally U.S.F.&G. complains that the trial court did not submit to itself as a jury, the various signatures for comparison. They were so compared. The court said ". . . . these signatures look very similar, the note and the answer, all of them look very similar". Yet the court went ahead to say U.S.F.&G. had not met its burden of proof.

Affirmed.