SLIP OPINION Cite as 2014 Ark. 384

# SUPREME COURT OF ARKANSAS

No. CR–10–53

| | | |
|---|---|---|
| DEREK SALES | | **Opinion Delivered** September 25, 2014 |
| | APPELLANT | |
| | | APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT [NO. CR–2005-24-3] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE |
| | | AFFIRMED. |

**DONALD L. CORBIN, Associate Justice**

Appellant Derek Sales appeals the order of the Bradley County Circuit Court denying his request for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.5 (2009). On appeal, Sales asserts that the circuit court erred in denying his petition because his trial counsel were ineffective (1) during the sentencing phase of his capital-murder trial by informing the jury that if Sales was sentenced to life imprisonment, there was a possibility that he might be pardoned by the governor; and (2) during opening statements after referring to Sales's escape from jail while he awaited trial. We find no error and affirm.

Sales was convicted in the Bradley County Circuit Court of the capital murder and aggravated robbery of Willie York and was sentenced to death and life imprisonment, respectively. This court affirmed his convictions and sentences in *Sales v. State*, 374 Ark. 222, 289 S.W.3d 423 (2008), *cert. denied*, 556 U.S. 1190 (2009). The underlying facts surrounding

Sales's crime are set forth in detail in that case, and only a brief recitation of the facts is necessary here.

Willie York, whom Sales knew and visited, was found murdered in his home on April 16, 2005. York, who suffered from rheumatoid arthritis, had very limited use of his hands and could not walk. For this reason, York was mostly confined to a recliner and a bed that was kept in the living room of his home. It was adduced at trial that Sales was aware that York, who sold beer by the can out of his home, used a cigar box as a cash register and as storage for some personal papers. Sales was also aware of the fact that York kept this cigar box near him at all times.

On the day of the murder, Sales was at the York home several times and purchased several beers from York. When York's family left his home at approximately 6:30 that evening, Sales was there, and he was still there later in the evening when York's granddaughters brought him dinner and when York's daughter stopped by for a short visit. Later that night, two of York's granddaughters went to the home to help York get into bed. When they arrived at the house, they could not see York sitting in his recliner and then noticed a shadowy figure, whom they recognized as Sales, moving about the house. Concerned, they called 911. One of the officers at the scene confronted Sales on the front porch of the home, and after Sales tried to flee, he was taken into custody. York was then found inside the home lying in a pool of blood on the floor. He was pronounced dead at the scene, and the medical examiner later determined that there were three possible causes of his death: strangulation, blunt-force trauma to the abdomen, head, and chest, and a stab wound

SLIP OPINION

of the neck. Sales was subsequently charged with residential burglary, aggravated robbery, and capital murder, although the residential burglary charge was later nol-prossed.

Sales filed his initial petition pursuant to Rule 37.5 on August 10, 2009. Thereafter, he sought and received permission from the circuit court to file an amended petition, which he filed on August 17, 2009. In his amended petition, Sales set forth numerous allegations, including allegations of ineffective assistance of counsel, in support of his claim for postconviction relief. The circuit court held an evidentiary hearing on the petition on September 9, 2009, and entered an order on October 8, 2009, denying Sales's Rule 37.5 petition. Sales appealed that decision to this court, asserting only two claims of error, which are the points now raised in the instant appeal. This court reversed the circuit court's order and remanded the matter with instructions that the circuit court enter specific findings of fact and conclusions of law on the two claims raised by Sales in his appeal. *Sales v. State*, 2013 Ark. 218.[1]

Upon remand, the circuit court entered an order consistent with our opinion but again denied Sales's request for relief. In this order, filed on June 7, 2013, the circuit court first addressed Sales's allegation that counsel's reference to his escape constituted ineffective assistance of counsel and reversed its previous finding that the reference was "probably" strategic in nature. The circuit court noted that the escape reference, made during counsel's opening statement, "was both unnecessary and foolish," particularly where the court had

---

[1]In our opinion, we noted that any claims raised by Sales in his Rule 37.5 petition that were not pursued on appeal were considered abandoned.

ordered in a previous pretrial hearing that any evidence related to the escape would be excluded under Arkansas Rule of Evidence 403.[2] But, the court went on to note that the reference was merely to the fact that Sales had escaped, and not to any specific conviction for escape and that there was no further mention of any escape. The circuit court then concluded that, because the State had presented overwhelming evidence of Sales's guilt, any reference to the escape could not have had any effect on the outcome in the guilt phase of the proceedings.

The circuit court also considered whether there could have been any "carryover" effect during the sentencing stage. The court began its analysis by noting that the State did not request that Sales's convictions for first-degree escape and second-degree battery be submitted to the jury as aggravators. The circuit court reasoned, however, that had the State so requested, it would have allowed the convictions to be included along with Sales's other prior convictions. Thus, according to the circuit court, Sales suffered no prejudice because the escape and battery convictions could have been properly admitted as aggravators during the sentencing portion of his trial.

The circuit court then addressed the issue of counsel's statement regarding the possibility of a pardon if Sales was sentenced to life without the possibility of parole made during counsel's closing argument in the penalty phase of the trial. The circuit court found

---

[2]The circuit court also noted that Sales was represented by different counsel at the pretrial hearing but, nevertheless, found that his trial counsel should have familiarized himself with the transcripts from any pretrial hearings.

that there was no strategic value in such a statement and noted that "[i]f what Colvin said can be called foolish and inept; Potts's remarks were perhaps even more so." While the circuit court found that Potts's statement fell below "any reasonable attorney performance standard as set out in *Strickland*, [466 U.S. 668 (1984),]" it further found that the statement was a correct statement of the law and provided the jury with no knowledge that it did not already possess. Thus, the circuit court concluded that while both statements demonstrated that counsel's representation of Sales fell below an objective standard of reasonableness, it could not conclude that, but for those deficiencies, the result would have been any different. Thus, according to the circuit court, Sales suffered no prejudice within the meaning of *Strickland*, as neither remark had any effect on the verdict at either stage. From that order comes the instant appeal.

It is well settled that this court does not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.*

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland*. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228. In asserting ineffective assistance of counsel under *Strickland*, the petitioner first must demonstrate that counsel's performance was

SLIP OPINION

deficient. *Id*. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id*. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55.

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Myers v. State*, 2012 Ark. 143, 400 S.W.3d 231. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*.

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Williams*, 2011 Ark. 489, 385 S.W.3d 228. We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697).

Sales's first point on appeal is that the circuit court erred in denying his Rule 37.5 petition on the ground that he received ineffective assistance of counsel because one of his attorneys, during the sentencing phase of his trial, informed the jury that Sales could be pardoned in the future if he were to receive a life sentence. The State asserts that this court should affirm the circuit court because it reached the right result, although for the wrong reason. Specifically, the State argues that, contrary to the circuit court's finding that counsel's performance was deficient, the statement by counsel was actually a matter of trial strategy and thus provides no basis for Rule 37.5 relief. Moreover, the State asserts that the circuit court's denial of relief on this ground was proper because Sales cannot demonstrate the required prejudice under *Strickland*. We agree with the State that the circuit court correctly concluded that Sales was not entitled to relief because he could not demonstrate that he was prejudiced as required by the second prong of *Strickland*.

During closing argument in the sentencing phase of Sales's trial, one of his trial counsel, Gary Potts, was arguing to the jury that Sales should be sentenced to life imprisonment without parole, instead of the death penalty, which prompted an objection from Potts's co-counsel, Bing Colvin. The following colloquy illustrates the pertinent exchange:

> MR. POTTS: Life without parole is exactly what it says. If he's convicted to life without parole, he goes into prison for life. Now, true, he possibly could be pardoned at some time in the future but realistically that won't happen because no governor is going to risk re-election –

> MR. COLVIN: Your Honor, I hate to object to my own counsel's argument. If he's sentenced to life without parole, he's never going to get out. He's never going to get out and they're not entitled -- What we say and what the prosecution says is not

even to insinuate that he might get out if he's pardoned if you're sentenced to life without parole.

THE COURT: Well, he's just saying it's one in a million. Let the jury decide. Where are you going, Mr. Potts?

MR. POTTS: I was leaning toward that we never can tell what future laws may be but today life without parole means life without parole. Okay? He will not see the outside of a prison. He will spend the rest of his life in a maximum-security penitentiary.

Sales now argues that this statement by his own counsel constituted deficient performance because he basically argued to the jury that any sentence other than the death penalty carried the possibility of Sales living in the community at some point in the future. Further, Sales asserts that he can demonstrate prejudice from this deficient performance as there is a reasonable probability that the sentencing outcome may have been different but for counsel's statement.

Sales acknowledges that this court reached a contrary conclusion in *Greene v. State*, 356 Ark. 59, 146 S.W.3d 871 (2004), but argues that his case is distinguishable from the facts in *Greene*. There, in an appeal from an order denying postconviction relief, Greene asserted that his trial counsel was ineffective for not objecting to a statement by the prosecuting attorney that an inmate sentenced to life without parole may still be released pursuant to commutation, pardon, or reprieve by the governor. Greene conceded that this court had previously ruled in *Greene v. State*, 343 Ark. 526, 37 S.W.3d 579 (2001) (*Greene III*), one of Greene's direct appeals, that such a statement did not constitute serious error but argued that this court should overrule its decision in *Greene III*. This court rejected Greene's argument and distinguished

8

the cases he relied on, *Simmons v. South Carolina*, 512 U.S. 154 (1994) and *Caldwell v. Mississippi*, 472 U.S. 320 (1985), by pointing out that those cases did not relate to the issue of the State seeking to inform the jury of the full status of the law. This court concluded that Greene was not entitled to postconviction relief because his counsel was not ineffective for failing to make a meritless argument.

Sales asserts that this is not a case where the deficient performance was the result of an attorney failing to object to the prosecutor's statements; rather, it was his own counsel making the questionable statement thereby causing his own co-counsel to object. Although Sales is correct that this is a factual distinction between his case and that of the defendant in *Greene*, he does not explain in any way how this distinction supports his conclusion that he was prejudiced. Sales simply argues in his brief to this court that there is a reasonable probability that the sentencing outcome may have been different "but for counsel's foolish, inept, and lame comment." The mere fact that the jury chose the more severe of the two possible punishments is not a sufficient demonstration of prejudice in light of the aggravators found to exist by the jury. Moreover, the statement by Sales's attorney, although unnecessary, was a correct statement of the law as set forth in Arkansas Code Annotated section 5-4-606, which provides in relevant part that a person sentenced to a term of life imprisonment without parole "shall not be released except pursuant to commutation, pardon, or reprieve of the Governor." Ark. Code Ann. § 5-4-606 (Repl. 1997). Accordingly, we cannot say that the circuit court erred in concluding that Sales failed to satisfy the prejudice prong of *Strickland* and therefore was not entitled to relief under Rule 37.5. And, because Sales cannot satisfy this requirement

9

of *Strickland*, it is not necessary to address the issue of whether counsel's statement constituted deficient performance. *See, e.g.*, *Anderson*, 2011 Ark. 488, 385 S.W.3d 783.

Sales asserts in his second point on appeal that his trial counsel was ineffective for mentioning during opening statement that Sales had escaped from jail while he awaited trial. Sales argues that the reference to the escape cannot be considered trial strategy and that there is a reasonable probability that the outcome of the guilt/innocence phase would have been different absent counsel's error. The State raises several arguments in support of its contention that the circuit court did not err in denying Rule 37.5 relief, including that evidence of Sales's guilt was overwhelming, such that counsel's statement was not sufficient to change the outcome of Sales's trial.

During his opening statement, one of the attorneys for Sales stated as follows:

> There will be proof in the case that we escaped, that we were arrested a year ago. The proof's going to be that Sales down there, the Sales in the jail that don't have lights. It's like being in a dungeon. Mr. Sales was in jail for something he didn't do. It was Christmas Eve, he had the blues. He had a person with him that was charged with capital murder, that had murdered a couple of his roommates and it just happened. That was far after the trial that we're here for today that we didn't do.

Then, during the State's presentation of its case, one of the State's witnesses, who was a jailer in Warren, began to reference the night that Sales escaped. Before the witness could go into any detail, defense counsel objected on the basis that the witness's answer was unresponsive to the question asked. The circuit court then called the attorneys to the bench and stated the following:

> I'll tell you what I'm going to do. I already told you all at pretrial -- you maybe weren't involved at that time, I think Mr. Morehead was -- but under 403 I

was going to disallow any reference to any subsequent jail escape attempt or jail escape. I thought that clearly the prejudice would outweigh any probative value. The only probative value would be an admission of guilt. It did not follow in close enough proximity to these original events to have any probative value there. It's just inadmissible and it's irrelevant to these charges. Mr. Colvin has at least partially opened the door; however, you're not bringing it in so much to rebut. I don't think it has a thing to do with this case. I don't think it should have been mentioned to begin with and I want it to end now because this is a capital case and I'm not going to go down the road with something that has absolutely nothing to do with what this man's on trial for, and it's highly, highly prejudicial. If either side wants me to I'll instruct the jury at the appropriate time, now is not it, that they are to disregard any reference by Mr. Colvin to any events at the jail subsequent to his arrest unless it had to do with some spontaneous declaration by this man, vis-a-vis guilt on this, what he's standing trial on now. If he'd confessed something to the jailer, that's one thing. But just to go into the escape, no, I'm not going to allow it. Thank you.

The circuit court offered to admonish the jury at a later point in the trial that it was not to consider any reference to the escape. Counsel later requested such an admonition and the court instructed the jury just before closing arguments as follows:

Ladies and gentlemen of the jury, at the outset of this trial, I've forgotten if it was in voir dire or in opening statements, defense counsel made some reference to a subsequent escape. You're not to consider his remarks or anything concerning that whatsoever in your deliberations here today.

The question now presented is whether this statement by counsel constituted ineffective assistance of counsel and, if so, can Sales demonstrate prejudice under *Strickland*. On remand, the circuit court in addressing this issue concluded that counsel was ineffective for referencing the escape but concluded that "Sales suffered no prejudice by Colvin's inept and untimely remark. The Court further finds that both convictions were admissible, but were unused, at the sentencing stage." In reaching the conclusion that Sales suffered no prejudice at either stage of the trial, the circuit court noted that the State's proof of guilt at

11

trial was overwhelming and that the murder was "gruesome and sadistic." We agree with the circuit court that Sales failed to satisfy the prejudice prong of *Strickland*.

In support of his argument, Appellant asserts in conclusory fashion that the "prejudice occurred by the jury hearing that not only was [Appellant] accused of capital murder and aggravated robbery, he had already escaped from jail, into their community, with another murderer." Even if we disregard the conclusory nature of Sales's argument of prejudice in the guilt phase, his argument still fails. We simply cannot conclude that counsel's one reference during opening statement to the escape substantially changed the outcome of this portion of the trial where there was overwhelming evidence of Sales's guilt, as we noted in his direct appeal when he challenged the sufficiency of the evidence against him. *See Sales*, 374 Ark. 222, 289 S.W.3d 423.

Moreover, to the extent that Sales's argument can be construed broadly enough to encompass an argument that he was prejudiced during the sentencing phase of his trial, such an argument also fails. The circuit court considered the issue of prejudice during the sentencing phase and concluded that Sales did not establish prejudice because, had the State moved to introduce Sales's convictions for escape and battery, the circuit court would have allowed them to be admitted during sentencing. The circuit court is correct that had the State sought to admit Sales's conviction for first-degree escape, it would have been admissible for use as an aggravator during sentencing.

A prior felony committed after the crime in question, but which resulted in a conviction prior to the sentencing hearing, may be used as a prior–violent–felony aggravator.

12

*See, e.g., Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994). The escape at issue occurred on December 24, 2005, while Sales was awaiting trial on these charges. Prior to his trial on the charges stemming from York's murder, the State tried Sales for several charges related to the escape, including first-degree escape. He was convicted on August 15, 2006, nine months before his trial in this case. In convicting Sales of the offense of first-degree escape, the State had to prove that he used or threatened the use of physical force in escaping from custody. *See* Ark. Code Ann. § 5-54-110(a)(1)(A) (Supp. 2005). Thus, during sentencing at Sales's capital-murder trial, the State could have moved to introduce Sales's conviction for escape to be used as an aggravating circumstance in the jury's weighing of the death penalty, because the prior felony necessarily involved the use or threat of violence.

Moreover, the State submitted Sales's other prior convictions for aggravated robbery, rape, and false imprisonment as aggravators during sentencing. In light of the aggravators that were submitted to the jury when weighing the death penalty, as well as the fact that the State could have introduced the additional conviction for first-degree escape, Sales cannot demonstrate with a reasonable probability that the outcome of his sentencing trial would have been different absent counsel's reference to Sales's escape. Accordingly, we cannot say that the circuit court erred in denying Sales's postconviction petition on this ground where he failed to demonstrate prejudice at either phase of his trial.

The order of the circuit court is affirmed.

*Harrelson Law Firm, P.A.*, by: *Jeff Harrelson*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.

SLIP OPINION