

# SUPREME COURT OF ARKANSAS

**No.** CR–13–885

| | |
|---|---|
| MICHAEL ARLIE FEUGET<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** February 12, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR–2010–594]<br><br>HONORABLE J. LEON JOHNSON, JUDGE<br><br><u>AFFIRMED</u>. |

**RHONDA K. WOOD, Associate Justice**

Michael Feuget appeals the denial of his petition for postconviction relief under Arkansas Rule of Criminal Procedure 37. Feuget contends he received ineffective assistance of counsel during his trial because: (1) his attorneys failed to present certain witness testimony to corroborate his affirmative defense of involuntary intoxication and impeach the testimony of an adverse witness; and (2) his attorneys failed to request a jury instruction on a lesser-included offense. We affirm the circuit court's ruling.

## I. *Relevant Facts*

Feuget robbed a bank on January 15, 2010. At trial, he defended on the theory that he was involuntarily intoxicated at the time of the robbery due to the combination of prescription medications he was taking. Feuget testified that in addition to taking Zoloft and Adderall, his psychiatrist, Dr. Joe Bradley, prescribed the drug Deplin approximately one week before the robbery. Feuget's expert, Dr. Bob Gale, opined that the combination



of Zoloft and Deplin caused Feuget to enter a toxic state in which he was unable to conform his conduct to the requirements of the law.

Dr. Bradley testified extensively about Feuget's treatment and prescription history over the three previous years. Dr. Bradley explained that he gave Feuget Deplin samples in an effort to boost the effectiveness of Feuget's Zoloft regimen. Dr. Bradley testified that he gave Feuget a month's worth of Deplin samples in December 2009, but that he did not remember actually writing a prescription for the drug. He readily acknowledged that it was possible he did also prescribe it. Dr. Bradley also testified that he saw Feuget a week before the robbery and that Feuget reported very minimal benefit from taking the Deplin.

The conflicting testimony regarding the Deplin prescription is at the heart of the first contention on appeal. Feuget's wife testified in rebuttal that she handled all of Feuget's medications. She testified that Feuget received a Deplin prescription and that she had filled it a week before the robbery. Feuget's counsel attempted to admit the prescription bottle into evidence, but it was excluded due to the State's hearsay objection. After the jury began deliberations, Feuget obtained a copy of the written prescription and moved for a mistrial. The motion was denied, and Feuget was convicted of theft of property and two counts of aggravated robbery.

Feuget subsequently requested a new trial, relying on the prescription copy and other pharmacy records corroborating the testimony that there was a prescription for Deplin in addition to the samples. At the hearing on the motion, Dr. Bradley admitted that his testimony at trial was apparently inaccurate and that he must have given Feuget the prescription. Dr. Bradley further testified that clinical studies have shown that the



dosage of Deplin that he prescribed is no more effective than a placebo. The court denied the motion for a new trial, and the court of appeals affirmed Feuget's conviction. *Feuget v. State*, 2012 Ark. App. 182, 394 S.W.3d 310.

Feuget next sought postconviction relief, alleging that he received ineffective assistance of counsel because his attorneys failed to subpoena the prescription records from the pharmacy and failed to subpoena a pharmacy employee who could authenticate the records. Feuget also claimed that he was denied effective assistance of counsel because his attorneys did not request a jury instruction on the lesser-included offense of robbery, causing Feuget to be convicted of the greater offense of aggravated robbery. The circuit court denied Feuget's petition, and this appeal followed.

## II. *Standard of Review*

We do not reverse the grant or denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Sales v. State*, 2014 Ark. 384, 441 S.W.3d 883. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id*.

We assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. Under this standard, the petitioner must first show that counsel's performance was deficient. *Id*. This requires a showing that counsel made errors so serious that counsel deprived the petitioner of the counsel guaranteed to the petitioner by the Sixth Amendment. *Id*. Second, the deficient



performance must have resulted in prejudice so pronounced as to have deprived the petitioner a fair trial whose outcome cannot be relied on as just. *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992). Both showings are necessary before it can be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.* Even if counsel's conduct is shown to be professionally unreasonable, the judgment will stand unless the petitioner demonstrates that the error had a prejudicial effect on the actual outcome of the proceeding. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55. The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, or in other words, that the decision reached would have been different absent the errors. *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* In making this determination, the totality of the evidence before the fact-finder must be considered. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000).

III.  *Presenting Additional Witnesses and Evidence*

For his first point, Feuget classifies Dr. Bradley's testimony as false and claims that the failure to call a records custodian and subpoena pharmacy records to verify that Feuget



was given a prescription for Deplin a week before the robbery vitiated his defense of involuntary intoxication. We disagree.

Under our jurisprudence, a petitioner claiming ineffective assistance of counsel is required to state the substance of the omitted witness's testimony and demonstrate that this omitted testimony resulted in actual prejudice to his defense. *Wainwright*, 307 Ark. at 579, 823 S.W.2d at 454. In this case, Feuget has demonstrated that the pharmacy witness would have authenticated his prescriptions and contradicted Dr. Bradley's testimony; however, we are not of the opinion that counsels' failure to call the witness was such an unreasonable lapse in professional judgment that Feuget was denied effective counsel.

The decision of whether or not to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37. *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001) (per curiam). An attorney's decision not to call a particular witness is largely a matter of professional judgment, and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not, in itself, proof of ineffectiveness. *Lee v. State*, 2009 Ark. 255, 308 S.W.3d 596. In this case, Dr. Bradley testified at length concerning Feuget's multiple medication changes over a three-year period, and he readily acknowledged that it was possible he had also written Feuget a prescription for Deplin in addition to providing him with samples of the drug. Feuget presented rebuttal testimony from his wife that he had received and she had filled a prescription for Deplin approximately one week before the robbery. Feuget, himself, also testified to this fact. Feuget's expert similarly testified that Feuget had been prescribed Deplin and was taking it at the time of the robbery, as did Dr. Lisa Doguet, who



performed a court-ordered evaluation of Feuget to determine his competency to stand trial. In short, Feuget presented the same evidence to which a pharmacy witness would have testified if one had been called, and we cannot conclude that failing to call an additional witness on the topic rises to the level of ineffective assistance of counsel.

Furthermore, under our standard or review, Feuget must demonstrate actual prejudice resulting from his counsel's failure to call a witness to verify the date of his prescription. Mere allegations that the jury would have been swayed by additional testimony are conclusory. *Wainwright*, 307 Ark. at 579, 823 S.W.2d at 454. Feuget has failed to show how presenting cumulative testimony regarding the date of his prescription would have created a reasonable probability that the outcome of his trial would have been different.

We cannot ignore that although Dr. Bradley admitted that he was mistaken about whether he had actually written a prescription for Deplin, he also testified that studies had shown that the dosage of Deplin he prescribed would only have had a placebo effect. He also reiterated that Feuget reported that the Deplin had minimal effect. The other expert witnesses at trial did not contest that Feuget was taking prescription Deplin at the time he committed the robbery; they simply did not believe that the Deplin made a difference. For example, Dr. Kim Light, a pharmacologist, testified that the Deplin would have had no impact and that Feuget was not intoxicated on the drugs that he was taking at the time of the robbery. Dr. Doguet accepted that Feuget was taking Deplin and that he was intoxicated, but she still testified that Feuget clearly appreciated the criminality of his actions and was capable of conforming his conduct to the law based on his behavior



before, during, and after committing the crime. Feuget's own expert, Dr. Gale, testified that Feuget had been given a prescription for Deplin a few days prior to the robbery; however, even Dr. Gale acknowledged that there was some dispute among the medical community as to whether Deplin would enhance the effects of the other medications that Feuget was taking. Considering the other evidence presented to the jury, Feuget is unable to show the existence of a reasonable probability that additional testimony showing that the prescription for Deplin was filled approximately one week before the robbery would have resulted in a different outcome.

IV. *Requesting Jury Instructions for a Lesser-Included Offense*

For his next point, Feuget argues that there was scant evidence to support his use of a weapon during the robbery and that defense counsel was ineffective because his attorneys did not request a jury instruction for the lesser-included offense of robbery. The circuit court's order denying postconviction relief concedes that a jury instruction on simple robbery would have been proper given the evidence.

Ultimately, this argument is to no avail. Matters of trial tactics and strategy are not grounds for postconviction relief on the basis of ineffective assistance of counsel. *Rankin v. State*, 365 Ark. 255, 227 S.W.3d 924. This court has long recognized that competent counsel may elect not to request an instruction on lesser-included offenses as a matter of strategy. *Henderson v. State*, 281 Ark. 406, 664 S.W.2d 451 (1984) (per curiam). This "all-or-nothing" approach recognizes the strategic consideration that a jury may be more likely to find in a defendant's favor when the only options are guilty and not guilty, rather than a possible compromise verdict on a lesser offense. *Id.* While the trial court may err to refuse



instructions on a lesser-included offense where the defense is not inconsistent with those instructions, counsel is not ineffective merely because an all-or-nothing strategy fails. *Johnson v. State*, 2009 Ark. 460, 344 S.W.3d 74 (per curiam).

The record reflects that counsel discussed with Feuget the possibility of moving to reduce the charges and instructing the jury on the lesser-included offense of robbery and, in fact, recommended this strategy. Counsel even went so far as to prepare the actual instruction. However, the record reflects that Feuget intentionally chose to forego this option because he believed the jury would acquit, and he did not want to give them another option to convict him of a lesser-included offense. Feuget cannot now claim that he received ineffective assistance of counsel when he made the very decision—about which he now complains—against the advice of counsel.

Feuget also argues that it was incumbent upon his attorneys to pursue the lesser-included offense even against his wishes; however, Feuget never presented this argument to the circuit court. On appeal, an appellant is limited to the scope and nature of the arguments he made below and that were considered by the circuit court in rendering its ruling. *Barker v. State*, 2014 Ark. 467, 448 S.W.3d 197 (per curiam). We will not consider new arguments raised for the first time on appeal. *Id*. Accordingly, we will not address this argument.

Affirmed.

HANNAH, C.J., and DANIELSON, J., concur.

**PAUL E. DANIELSON, Justice, concurring.** I agree with the majority's conclusion to affirm the circuit court's denial of Appellant Michael Arlie Feuget's petition


for postconviction relief but write separately to set forth facts necessary to a proper understanding of the appeal, as well as what I believe is the correct analysis of Feuget's first point on appeal.

Feuget stood trial on two counts of aggravated robbery in connection with a robbery of an IberiaBank branch in Little Rock. Feuget did not deny committing the robberies; in fact, he testified that he was attempting to emulate the bank robber, John Dillinger. At trial, Feuget raised the affirmative defenses of mental disease or defect and involuntary intoxication. In asserting the defense of involuntary intoxication, Feuget alleged that his action resulted from a toxic reaction to the medications Zoloft, Adderall, and Deplin that he was taking at the direction of his treating psychiatrist, Dr. Joe Bradley. The jury rejected his defense and found him guilty.

After Feuget was found guilty, he filed a motion for new trial, alleging inter alia that Dr. Bradley testified for the first time at trial that he did not recall writing Feuget a prescription for Deplin on January 6, 2010, and instructed Feuget to stop taking the Deplin at that visit. Feuget stated that this claim was nowhere to be found in any of Dr. Bradley's notes or records, which had been relied on by the defense, the experts who testified at trial, and had also been turned over to the State. Feuget stated that he tried to obtain the actual prescription written by Dr. Bradley but was unable to locate it until after his trial was over. Feuget asserted that the prescription proved that Dr. Bradley's testimony was inaccurate. And, he asserted that it was material evidence, in part, because the State argued to the jury in closing arguments that Feuget had not met his burden of proof on the defense of involuntary intoxication because Dr. Bradley had instructed him



to stop taking the Deplin at the January 6 visit. Feuget asserted that he was entitled to a new trial because the prescription was new evidence that would have impacted the outcome of the case.

Following the denial of his motion for new trial and the court of appeals's affirmance of his direct appeal, Feuget filed a motion for postconviction relief, asserting two claims of ineffective assistance of counsel. In his first claim, Feuget asserted that counsel was ineffective in failing to properly subpoena and present Walgreens' pharmacy records to rebut the inaccurate testimony of Dr. Bradley or to at least seek a continuance or a forthwith subpoena, if necessary, to the appropriate Walgreens' keeper of the records to testify in surrebuttal. He further asserted that this error prejudiced him because it prevented him from proving his involuntary-intoxication defense and that had he rebutted Dr. Bradley's testimony, there is a reasonable probability that the outcome of his trial would have been different. Feuget continues those same arguments on appeal.

Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Sales v. State*, 2014 Ark. 384, 441 S.W.3d 883. In asserting ineffective assistance of counsel under *Strickland*, the petitioner first must demonstrate that counsel's performance was deficient. *Id.* This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The defendant claiming ineffective assistance of



counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Myers v. State*, 2012 Ark. 143, 400 S.W.3d 231. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228. We also recognize that "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697).

In advancing his first *Strickland* argument, Feuget asserts that his trial counsel was ineffective in failing to present admissible evidence to properly challenge or impeach Dr. Bradley's testimony that he did not write Feuget a prescription for Deplin and, in fact, advised him to stop the medication. I agree with the circuit court and the majority that Feuget is not entitled to postconviction relief on this point, but I take issue with the majority's seeming conclusion that trial counsels' decision not to further challenge or



impeach Dr. Bradley was a matter of trial strategy or did not rise to the level of ineffective assistance of counsel because there was other testimony presented on the issue.

Although not discussed by the majority, Feuget's trial counsel both testified at the Rule 37 hearing that they were surprised by Dr. Bradley's testimony at trial. They both admitted that the evidence that Feuget had taken the Deplin was necessary to his defense because of his expert's testimony that the drug had a multiplier effect on the other medications. Neither attorney ever intimated that the decision to not put on rebuttal evidence was one of trial strategy; rather, they both testified that they were under a time crunch because they were near the end of the trial.

Ultimately, however, I think this issue is irrelevant. This court can affirm the circuit court's order on the second prong of *Strickland* because I do not believe that Feuget has established that there is a reasonable probability that the outcome of his trial would have been different, such that he can satisfy the prejudice requirement of *Strickland*. Reviewing the record, it is clear that Feuget asserted the defense of involuntary intoxication from the outset. His expert, Dr. Gale, testified that the combination of medications prescribed to Feuget, in the absence of appropriate warnings and counseling, caused Feuget to be intoxicated in a way that he could not conform his conduct to the requirements of the law. Dr. Gale explained that he interviewed Feuget and according to this interview and Dr. Bradley's records that had been provided to him, he was aware that Feuget was on Zoloft, Adderall, and Deplin three or four days prior to the robberies. Dr. Gale explained that some medical studies indicate that Deplin may boost the effects of the Zoloft and Adderall.



The State countered Dr. Gale's testimony, however, by putting forth evidence that Feuget was able to conform his conduct to the law at the time of the robberies. Dr. Lisa Doguet, a forensic fellow at the Arkansas State Hospital, testified that she examined Feuget following his arrest and diagnosed him with intoxication and cyclothymic disorder but opined that he was able to appreciate the criminality of his conduct.

The State also introduced the testimony of Dr. Kim Edward Light, a professor of pharmacology at the University of Arkansas for Medical Sciences College of Pharmacy. Dr. Light testified that Deplin had no effect on the absorption of Zoloft. He opined that Feuget was not intoxicated from either the Adderall or the Zoloft he was taking at the time of the robbery. He also stated that the addition of Deplin would not have had any physiological or pharmacological effect on Feuget, unless he had been suffering from a severe folic acid deficiency.

Finally, the State called Dr. Bradley as a rebuttal witness, who testified that he gave Feuget about a month's worth of samples of Deplin, on December 2, 2009, and instructed him to return in a month so he could determine if the Deplin had helped. Dr. Bradley further testified that he then saw Feuget on January 6, 2010, and that Feuget reported minimal benefit from the Deplin, so the doctor instructed him to stop that medication. At trial, Dr. Bradley stated that he did not recall giving Feuget a written prescription for the Deplin.

In response to Dr. Bradley's testimony, Feuget called his wife, Michelle Feuget, to testify regarding his medications. She testified that she picked up her husband's Deplin on January 7, 2010, but that she could not find the written prescription. Feuget tried to

introduce documents from Walgreens showing the prescription had been filled there, as well as the prescription bottle, but the circuit court would not admit the items into evidence.

No one in this case disputes the fact that Dr. Bradley's testimony at trial that he had not written a prescription for the Deplin and had instructed Feuget to stop the medication since it had not helped him was mistaken. The critical question is what impact, if any, this incorrect testimony had on Feuget's defense of involuntary intoxication. Feuget asserts, without any support, that the testimony of Dr. Bradley caused the jury to reject his affirmative defense. The record simply does not support such a conclusion. Even absent Dr. Bradley's mistaken testimony, the jury had other evidence, as set forth above, which may have led it to reject Feuget's defense. The only testimony that supported the defense theory was provided by Feuget's own expert.

Based on the record before this court, I simply cannot say that the circuit court clearly erred in concluding that Feuget failed to prove that he was prejudiced by any error, such that there is a reasonable probability that the outcome of his trial would have been different. Thus, I would affirm the denial of the Rule 37 petition because Feuget cannot satisfy the second prong of *Strickland*, which renders any discussion of the first *Strickland* prong unnecessary.

I respectfully concur.

HANNAH, C.J., joins.

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.