Paul E. Danielson, Justice, concurring. I agree with the majority’s conclusion to affirm the circuit court’s denial of Appellant Michael Arlie Feuget’s petition |sfor postconviction relief but write separately to set forth facts necessary to a proper understanding of the appeal, as' well as what I believe is the correct analysis of Feuget’s first point on appeal. Feuget stood trial on two counts of aggravated robbery in connection with a robbery of an IberiaBank branch in Little Rock. Feuget did not deny committing the robberies; in fact, he testified that he was attempting to emulate the bank robber, John Dillinger. At trial, Feuget raised the affirmative defenses of mental disease or defect and involuntary intoxication. In asserting the defense of involuntary intoxication, Feuget alleged that his action resulted from a toxic reaction to the medications Zoloft, Adderall, and Deplin that he was taking at the direction of his treating psychiatrist, Dr. Joe Bradley. The jury rejected his defense and found him guilty. After Feuget was found guilty, he filed a motion for new trial, alleging inter alia that Dr. Bradley testified for the first time at trial that he did not recall writing Feu-get a prescription for Deplin on January 6, 2010, and instructed Feuget to stop taking the Deplin at that visit. Feuget stated that this claim was nowhere to be found in any of Dr. Bradley’s notes or records, which had been relied on by the defense, the experts who testified at trial, and had also been turned over to the State. Feu-get stated that he tried to obtain the actual prescription written by Dr. Bradley but was unable to locate it until after his trial was over. Feuget asserted that the prescription proved that Dr. Bradley’s testimony was inaccurate. And, he asserted that it was material evidence, in part, because the State argued to the jury in closing arguments that Feuget had not met his burden of proof on the defense of involuntary intoxication because Dr. Bradley had instructed him |into stop taking the Deplin at the January 6 visit. Feuget asserted that he was entitled to a new trial because the prescription was new evidence that would have impacted the outcome of the case. Following the denial of his motion for new trial and the court of appeals’s affir-mance of his direct appeal, Feuget filed a motion for postconviction relief, asserting two claims of ineffective assistance of counsel. In his first claim, Feuget asserted that counsel was ineffective in failing to properly subpoena and present Walgreens’ pharmacy records to rebut the inaccurate testimony of Dr. Bradley or to at least seek a continuance or a forthwith subpoena, if necessary, to the appropriate Wal-greens’ keeper of the records to testify in surrebuttal. He further asserted that this error prejudiced him because it prevented him from proving his involuntary-intoxication defense arid that had he rebutted Dr. Bradley’s testimony, there is a reasonable probability that the outcome of his trial would have been different. Feuget continues those same arguments on. appeal. Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Sales v. State, 2014 Ark. 384, 441 S.W.3d 883. In asserting ineffective assistance of counsel under Strickland, the petitioner first must demonstrate that counsel’s performance was deficient. Id. This requires a showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the petitioner by the Sixth Amendment. Id. The reviewing court must indulge in a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Id. The defendant claiming ineffective assistance of ^counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel’s perspective at the time of trial, could not have been the result of reasonable professional judgment. Id. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel’s errors were so serious as to deprive the petitioner of a fair trial. Myers v. State, 2012 Ark. 143, 400 S.W.3d 231. This requires the petitioner to show that there is a reasonable probability that the fact-finder’s decision would have been different absent counsel’s errors. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. Unless a petitioner makes both Strickland showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Williams v. State, 2011 Ark. 489, 385 S.W.3d 228. We also recognize that “[tjhere is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.” Anderson v. State, 2011 Ark. 488, at 3-4, 385 S.W.3d 783, 787 (quoting Strickland, 466 U.S. at 697, 104 S.Ct. 2052). In advancing his first Strickland argument, Feuget asserts that his trial counsel was ineffective in failing to present admissible evidence to properly challenge or impeach Dr. Bradley’s testimony that he did not write Feuget a prescription for Deplin and, in fact, advised him to stop the medication. I agree with the circuit court and the majority that Feuget is not entitled to postconviction relief on this point, but I take issue with the majority’s seeming conclusion that trial counsels’ decision not to further challenge or 112impeach Dr. Bradley was a matter of trial strategy or did not rise to the level of ineffective assistance of counsel because there was other testimony presented on the issue. Although not discussed by the majority, Feuget’s trial counsel both testified at the Rule 37 hearing that they were surprised by Dr. Bradley’s testimony at trial. They both admitted that the evidence that Feu-get had taken the Deplin was necessary to his defense because of his expert’s testimony that the drug had a multiplier effect on the other medications. Neither attorney ever intimated that the decision to not put on rebuttal evidence was one of trial strategy; rather, they both testified that they were under a time crunch because they were near the end of the trial. Ultimately, however, I think this issue is irrelevant. This court can affirm the circuit court’s order on the second prong of Strickland because I do not believe that Feuget has established that there is a reasonable probability that the outcome of his trial would have been different, such that he can satisfy the prejudice requirement of Strickland. Reviewing the record, it is clear that Feuget asserted the defense of involuntary intoxication from the outset. His expert, Dr. Gale, testified that the combination of medications prescribed to Feuget, in the absence of appropriate warnings and counseling, caused Feuget to be intoxicated in a way that he could not conform his conduct to the requirements of the law. Dr. Gale explained that he interviewed Feuget and according to this interview and Dr. Bradley’s records that had been provided to him, he was aware that Feuget was on Zoloft, Adderall, and Deplin three or four days prior to the robberies. Dr. Gale explained that some medical studies indicate that Deplin may boost the effects of the Zoloft and Adde-rall. 11sThe State countered Dr. Gale’s testimony, however, by putting forth evidence that Feuget was able to conform his conduct to the law at the time of the robberies. Dr. Lisa Doguet, a forensic fellow at the Arkansas State Hospital, testified that she examined Feuget following his arrest and diagnosed him with intoxication and cyclothymic disorder but opined that he was able to appreciate the criminality of his conduct. The State also introduced the testimony of Dr. Kim Edward Light, a professor of pharmacology at the University of Arkansas for Medical Sciences College of Pharmacy. Dr. Light testified that Deplin had no effect on the absorption of Zoloft. He opined that Feuget was not intoxicated from either the Adderall or the Zoloft he was taking at the time of the robbery. He also stated that the addition of Deplin would not have had any physiological or pharmacological effect on Feuget, unless he had been suffering from a severe folic acid deficiency. Finally, the State called Dr. Bradley as a rebuttal witness, who testified that he gave Feuget about a month’s worth of samples of Deplin, on December 2, 2009, and instructed him to return in a month so he could determine if the Deplin had helped. Dr. Bradley further testified that he then saw Feuget on January 6, 2010, and that Feuget reported minimal benefit from the Deplin, so the doctor instructed him to stop that medication. At trial, Dr. Bradley stated that he did not recall giving Feuget a written prescription for the Dep-lin. In response to Dr. Bradley’s testimony, Feuget called his wife, Michelle Feuget, to testify regarding his medications. She testified that she picked up her husband’s Deplin on January 7, 2010, but that she could not find the written prescription. Feuget tried to | ^introduce documents from Walgreens showing the prescription had been filled there, as well as the prescription bottle, but the circuit court would not admit the items into evidence. No one in this case disputes the fact that Dr. Bradley’s testimony at trial that he had not written a prescription for the Dep-lin and had instructed Feuget to stop the medication since it had not helped him was mistaken. The critical question is what impact, if any, this incorrect testimony had on Feuget’s defense of involuntary intoxication. Feuget asserts, without any support, that the testimony of Dr. Bradley caused the jury to reject his affirmative defense. The record simply does not support such a conclusion. Even absent Dr. Bradley’s mistaken testimony, the jury had other evidence, as set forth above, which may have led it to reject Feuget’s defense. The only testimony that supported the defense theory was provided by Feuget’s own expert. Based on the record before this court, I simply cannot say that the circuit court clearly erred in concluding that Feuget failed to prove that he was prejudiced by any error, such that there is a reasonable probability that the outcome of his trial would have been different. Thus, I would affirm the denial of the Rule 37 petition because Feuget cannot satisfy the second prong of Strickland, which renders any discussion of the first Strickland prong unnecessary. I respectfully concur. Hannah, C.J., joins.