SLIP OPINION

Cite as 2016 Ark. 38

# SUPREME COURT OF ARKANSAS

**No.** CR-15-171

| | |
|---|---|
| | **Opinion Delivered** February 4, 2016 |
| STATE OF ARKANSAS APPELLANT/ CROSS-APPELLEE | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. CR-2007-1550-1 (A)] |
| V. | HONORABLE ROBIN F. GREEN, JUDGE |
| BRANDON E. LACY APPELLEE/ CROSS-APPELLANT | <u>REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL</u>. |

## RHONDA K. WOOD, Associate Justice

Brandon Lacy was convicted of capital murder and sentenced to death. We affirmed on direct appeal. Lacy then filed a Rule 37.5 petition wherein he alleged ineffective assistance of counsel. The circuit court granted Lacy a new sentencing hearing after finding that defense counsel's performance had been inadequate. The State has appealed from this order. In addition, Lacy has cross-appealed from the circuit court's denial of his claim for relief based on counsel's failure to present an affirmative defense of mental disease or defect. On the direct appeal from the Rule 37.5 order, we reverse and remand because the circuit court analyzed the case under a subjective legal standard; on the cross-appeal, we affirm.

*Relevant Facts*

Details of this case can be found in our opinion from Lacy's direct appeal. *See Lacy v. State*, 2010 Ark. 388, 377 S.W.3d 227. Briefly, Lacy was charged with capital murder. Lacy admitted committing the crime with an accomplice. At trial, Lacy was represented by

SLIP OPINION

multiple lawyers, with Steve Harper as "lead counsel." Harper conducted the sentencing phase and was responsible for mitigation.

Harper knew that Lacy had a history of alcoholism and substance abuse; thus, he arranged for Lacy to undergo psychological testing. Dr. Curtis Grundy, a psychologist, examined Lacy twice. Dr. Grundy testified at a pretrial hearing that Lacy was competent to stand trial. Dr. Robin Ross also conducted a forensic evaluation and concluded that Lacy was competent to stand trial and did not have a mental disease or defect. Harper also consulted with Dr. Robert Forrest; according to Harper, Dr. Forrest concluded that additional psychological tests would not be "foolish" but ultimately would not be worth the time or money.

The case proceeded to a jury trial. Lacy's attorneys declined to present an affirmative defense of mental disease or defect. The jury found Lacy guilty of capital murder and aggravated robbery. At the sentencing phase, Harper presented a number of witnesses in mitigation. These witnesses, who were Lacy's family members, testified about Lacy's difficult and abusive childhood, as well as Lacy's heavy drinking at a very early age. In addition, Harper gave very brief opening and closing statements. No experts testified. After deliberating, the jury sentenced Lacy to death.

Following the direct appeal, the circuit court held a hearing regarding Lacy's allegations of ineffective assistance of counsel.[1] One contention was that Harper's performance during sentencing was deficient. Much of the focus at the Rule 37 hearing was

---

[1] The circuit court initially dismissed the case without holding an evidentiary hearing. We reversed and remanded because the record did not conclusively show that Lacy was entitled to no relief. *Lacy v. State*, 2013 Ark. 34, 425 S.W.3d 746.

on Harper's closing argument to the jury at the end of the sentencing phase. His closing argument was, by his own admission, "one of the worst I've ever given." Harper would go on to explain as follows:

> By the time that portion of the trial came around, I'd had to adopt a lot of the burdens of every portion of the trial and it was—it was a train wreck. By the time it came around I was physically, mentally, emotionally exhausted. I was beat dead and I didn't give a good closing. . . . Could have been a lot better.

Lacy's Rule 37.5 counsel also argued that Lacy was entitled to relief because his attorneys at trial should have raised an affirmative defense of mental disease or defect. Lacy presented testimony from two experts in support of this allegation. Dr. Jeffrey Gould, a forensic psychiatrist, testified that Lacy suffered from alcohol-use disorder and depressive disorder. Dr. Gould further testified that, had he been originally consulted in Lacy's capital murder case, he would have recommended that Lacy undergo a neuropsychological evaluation.

Dr. Barry Crown, a psychologist, testified that he had conducted a neuropsychological exam on Lacy. Dr. Crown specified, however, that his exam was "status oriented" and was relevant only for the date that he examined Lacy, which was in December 2011. Dr. Crown concluded that Lacy had "significant neuro psychological impairment impacting multiple functional areas." Dr. Crown diagnosed Lacy with cognitive disorder intellect, not otherwise specified. Specifically, Dr. Crown opined that Lacy had delayed memory, impaired reasoning and judgment, and impaired language-based critical thinking.

To rebut Dr. Crown's diagnosis, the State presented testimony from Dr. Richard Price, a neuropsychologist. Dr. Price explained that Dr. Crown's diagnosis of Lacy's

cognitive disorder was essentially a "mild neurocognitive disorder where there is some documentation of . . . a brain injury." Dr. Price testified that a person with this diagnosis could still be high functioning. Further, Dr. Price testified that the diagnosis was based on a self-reported brain injury rather than objective medical data, a fact that "weaken[s] that opinion for sure." Dr. Price also noted that Lacy had completed 60 hours of college credit while in prison, suggesting a degree of intellectual skills.

The circuit court entered a written order granting Lacy a new sentencing hearing based on Harper's testimony that his performance had been inadequate. However, the court denied Lacy relief on the basis that Harper should have presented a defense of mental disease or defect. The State appeals from the first finding, and Lacy appeals from the second.

*Relevant Law*

We do not reverse the grant or denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Sales v. State*, 2014 Ark. 384, 441 S.W.3d 883. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id*.

We assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. Under this standard, the petitioner must first show that counsel's performance was deficient. *Id*. This requires a showing that counsel made errors so serious that counsel deprived the petitioner of the counsel guaranteed to the petitioner by the Sixth Amendment. *Id*. Second, the deficient performance must have

resulted in prejudice so pronounced as to have deprived the petitioner a fair trial whose outcome cannot be relied on as just. *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992).

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Feuget v. State*, 2015 Ark. 43, 454 S.W.3d 734. Even if counsel's conduct is shown to be deficient, the judgment will stand unless the petitioner demonstrates that the error had a prejudicial effect on the actual outcome of the proceeding. *Id.* The petitioner must show that there is a reasonable probability that, but for counsel's errors, the decision reached would have been different absent the errors. *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.*

### Direct Appeal

We address first the circuit court's finding that Harper's performance during the sentencing phase was deficient. The circuit court granted Lacy a new sentencing hearing based on "the testimony and actions of . . . Steve Harper." Again, Harper testified that he had been under significant stress and that his closing argument during the sentencing phase was "one of the worst I've ever given." Harper further testified that his mitigation case "could have been a lot better." There was also testimony at the Rule 37.5 hearing from Didi Sallings, former executive director of the Public Defender Commission, and from Jay

Saxton, Harper's co-counsel. Both gave Harper's performance mixed reviews: while they were critical of Harper's performance, they suggested that he was adequately prepared.

The circuit court erred because, when explaining its decision to grant a new hearing, it referenced only Harper's own assessment of his performance. A petitioner making a claim for ineffective assistance of counsel must show that counsel's performance fell below an *objective* standard of reasonableness. *Mancia v. State*, 2015 Ark. 115, 459 S.W.3d 259. We have further noted that counsel should be "evaluated according to professional standards of reasonableness, not by his own subjective assessment of his performance." *Howard v. State*, 367 Ark. 18, 33, 238 S.W.3d 24, 36 (2006). Rather than applying an objective test, the circuit court here applied a subjective one.

Both the State and Lacy acknowledge that the test is objective. Both also urge this court to review the record and apply the objective test without remand. We decline to do so: the circuit court is in a better position to apply the objective test. When a circuit court applies the wrong standard in a petition for postconviction relief, this court has found it necessary to reverse and remand for the correct standard to be applied. *Misskelley v. State*, 2010 Ark. 415; *Baldwin v. State*, 2010 Ark. 412 (remanding for the circuit court to apply the correct legal standard in a petition for writ of habeas corpus). Therefore, we reverse and remand. On remand, the court should use an objective legal standard when assessing whether Lacy received effective representation.

In addition to the foregoing, the circuit court's order on remand should comply with Rule 37.5(i) of the Arkansas Rules of Criminal Procedure. That rule requires the circuit court to make specific written findings with regard to each legal and factual issue raised by


the petition. While the court's order here discussed the facts, the order otherwise failed to comply with this rule's more "exacting requirements." *See Fudge v. State*, 354 Ark. 148, 151, 120 S.W.3d 600, 602 (2008).

*Cross-appeal*

We next consider Lacy's cross-appeal. Lacy argues that his trial counsel was deficient for failing to present an affirmative defense of mental disease or defect; in the alternative, Lacy argues that this failure entitles him to a new sentencing hearing. We affirm the circuit court's ruling that Lacy was not entitled to relief on this ground.

Under Arkansas Code Annotated section 5-2-312 (Repl. 2013), a defendant has an affirmative defense if, at the time he engaged in the charged conduct, he lacked the capacity to (1) conform his conduct to the requirements of the law or (2) appreciate the criminality of his conduct. Before his trial, Lacy underwent at least two psychological evaluations. Both experts, Dr. Grundy and Dr. Ross, opined that Lacy had no mental disease or defect and was competent to stand trial. Another psychologist, Dr. Forrest, reviewed Lacy's records and concluded that further neuropsychological testing would yield little results.

Lacy also underwent psychological testing for the purposes of his Rule 37 hearing. Like the experts who examined him before trial, none of these experts opined that Lacy was incompetent to stand trial. Dr. Gould testified that Lacy suffered from alcohol-use disorder and depressive disorder. And while Dr. Crown diagnosed Lacy with a cognitive disorder, he never testified that Lacy would have been incompetent to stand trial. In any event, Dr. Price criticized Dr. Crown's methodology, pointing out that Dr. Crown had reviewed limited records and that Lacy's IQ score (106) and his completion of 60 hours of college


credit undermined the severity of the diagnosis. The circuit court explicitly credited Dr. Price's testimony in its order denying Lacy relief on this ground: "According to Dr. Price, though there is evidence of [Lacy's] substance abuse, the records and date do not support a diagnosis of brain damage, or any sort of neuropsychological disorder."

There was also testimony regarding "memory confabulation." It was undisputed that Lacy was intoxicated when he committed the murder. Dr. Grundy testified that, as a result of his intoxication, Lacy may have forgotten the events and filled them in with details provided by someone else. Even so, Dr. Grundy noted in his report that Lacy could still recall specific information from the night of the murder.

We cannot say that the circuit court's ruling on this ground was clearly erroneous. First, Harper conducted a thorough investigation into Lacy's cognitive abilities, and at least three psychologists failed to diagnose him with a mental disease or defect. Second, the one doctor who did so diagnose had his methodology criticized by the State's expert. The circuit court gave more weight to this criticism in its order, which, as the fact finder, it was entitled to do. *See U.S. Fidelity & Guaranty Co. v. Park*, 254 Ark. 129, 132, 491 S.W.2d 791, 793 (1973) (stating that "it is within the province of the factfinder to determine the value and weight to be given to the testimony of experts"). Third, no expert ever testified that Lacy was legally incompetent under section 5-2-312 or that Lacy in fact did not recall the murder. For all the above reasons, counsel's failure to present an affirmative defense of mental disease or defect was not deficient performance.

*Conclusion*

On direct appeal, we reverse the circuit court's ruling that Lacy received ineffective assistance of counsel based solely on his counsel's testimony that his performance had been inadequate. We remand the case to the circuit court, which should assess counsel's performance under an objective standard; the circuit court's written order on remand should also comply with the exacting requirements of Rule 37.5(i). On cross-appeal, we affirm the circuit court's denial of relief based on counsel's failure to present an affirmative defense.

Reversed and remanded on direct appeal; affirmed on cross-appeal.

*Leslie Rutledge*, Att'y Gen., by:  *Pamela A. Rumpz*, for appellant.

*Benca & Benca*, by:  *Patrick J. Benca*, for appellee.